## STRONG *vs.* WHEATON and others.

Stockholders in a manufacturing corporation are not bound by the acts or declarations of the foreman of the company; he not being in any respect their agent.

A judgment recovered against a manufacturing corporation, by an employee, is not even *prima facie* evidence of the amount which the plaintiff therein is entitled to recover in a subsequent action brought by him against stockholders, for work and labor.

To entitle the plaintiff to recover in such an action he is bound to prove not only the existence of the corporation, the recovery of a judgment against it, the issuing and return of an execution unsatisfied in whole or in part, but the performance of labor to some amount, and that the defendants were stockholders.

Persons signing the articles of association of a manufacturing company are stockholders ; and when the holding of stock is once established it must be presumed to continue, until its surrender or assignment is shown.

Strong *v.* Wheaton.

The word " obligation," as used in section 120 of the code, which declares
that persons severally liable on the same *obligation* or instrument, &c., may
all or any of them be included in the same action at the option of the plain-
tiff, should be confined to its legal meaning. It does not embrace a class
of actions not evidenced by a writing.

Accordingly *held* that an action for work and labor could not be maintained
against two stockholders of a corporation, by an employee of the company,
without bringing in the other stockholders.

APPEAL from a judgment rendered at the circuit. The
cause was tried before the court without a jury. The
action was brought against the defendant to recover for work
and labor done by the plaintiff and his servants for the
American Printing Press Company, a corporation duly or-
ganized under the general law of 1848, regulating the incor-
poration of manufacturing companies, and located at Oneida
depot in Madison county. The defendants were stockholders
in said company. On the trial the plaintiff gave evidence as
to the length of time he was in the employ of the company,
but it was very loose and indefinite. He also proved that
there was a settlement with some of the foremen of the
company after the dissolution of the corporation. The re-
covery of a judgment against the company and the issuing
of an execution thereon, and its return unsatisfied, were also
proved. The court treated the judgment against the com-
pany as *prima facie* evidence of the amount due to the plain-
tiff ; and this presents the principal question discussed on
the appeal and by the justice delivering the opinion of the
general term.

*Sheldon & Brown,* for the appellants.

*Gray & Bates,* for the respondent.

*By the Court,* MULLIN, J. To entitle the plaintiff to
recover he was bound to prove, not only the existence of the
corporation, the recovery of a judgment against it, the issu-
ing and return of an execution unsatisfied in whole or in

part, but the performance of labor to some amount, and that the defendants were stockholders.

It is insisted by the appellants' counsel that there is no legal proof of service rendered to an amount equal to the sum recovered. The plaintiff himself was called, and testified that he commenced work for the corporation in December, 1856, and worked to the last of February, 1857, at twelve shillings per day. He does not inform us on what day or in what part of the month of December he commenced, nor the day on which his service ended. On his re-direct examination he says : " we received no money in December, January or February ; we asked for some in each of these months." Being employed by the day, he was entitled to recover only for the amount of days he actually worked, and it is quite clear that he did not work all the time. To obviate the difficulty of not having proved the precise number of days' labor, the plaintiff gave evidence of a settlement with the foreman and a balance struck, in March, after the corporation had ceased business. This evidence was objected to, but the objection was overruled, and the evidence received. If the corporation had ceased business it is difficult to understand how the foreman could bind the company, much less the stockholders, by any act or declaration of his own.

I am quite clear that on the evidence the corporation was not bound by the settlement. But if I am mistaken in that, there can be no pretense whatever for holding the individual stockholders bound by the act or declaration of the foreman. He was in no respect their agent.

The judgment recovered against the corporation is no evidence of the amount which the plaintiff is entitled to recover, as against the stockholders. It is essential to a right of action against the stockholders that a judgment should have been recovered, but it is proof of nothing beyond the fact of its own existence. (*Moss* v. *McCulloch*, 5 *Hill*, 131. In *Same* v. *Same*, (7 *Barb.* 279,) the general term in the 4th district held a judgment against the corporation *prima facie* evi-

dence, in an action against the stockholders; thus directly overruling the case in the 5th Hill. The latter case is overruled on the grounds that the case of *Slee* v. *Bloom,* (20 *John.* 669,) in the court of errors, was decisive of the question, and the court was not at liberty to follow the case in the 5th Hill. Justice Cowen, in his opinion in the latter case, reviews the opinion of Chief Justice Spencer in *Slee* v. *Bloom,* and comes to the conclusion that he did not intend to depart from the law as laid down by the chancellor on the point under consideration, and as the judgment of the court of errors could be sustained upon other grounds, he concluded that *Slee* v. *Bloom* was not decisive. And the other judges seem to have concurred with him, and to have adopted, after mature consideration, the rule as I have stated it. With all respect for the court which felt itself at liberty to overrule the decision in 5th Hill, it seems to me that Justice Cowen was right in holding the decision of the court of errors not binding on this question.

When that case was before the chancellor, (5 *John. Ch.* 366,) it was shown that the indebtedness to the plaintiff from the corporation was for real and personal estate sold by Slee to A., for part of which he accepted stock in payment and a bond of the company for the residue. About the time the corporation ceased business the trustees and Slee had a settlement of their respective claims, and the balance due on the bond was ascertained. After this, Slee brought his action to recover such balance, against the company, and recovered. The bill was then filed against the stockholders, under the statute, to compel contributions to pay the plaintiff's debt. The bill was dismissed by the chancellor on grounds not necessary to be considered here. The decree was reversed, and the case remitted to chancery to give effect to the judgment. In the decree entered in chancery there was an order of reference to ascertain and report the debt due to Slee, and the parties were permitted to use the pleadings and proofs, and to give such further competent proof as either

party might see fit to furnish. The master made a special report, in which he stated there were questions raised before him which it was important to the parties to have decided before he proceeded further in the investigation of the accounts; that in order to establish the debt against the corporation, a copy of the judgment in favor of Slee against it had been produced, and describes the judgment. He then proceeds to say that from the proved and admitted facts in the case the corporation did make, execute and deliver the bond described in the judgment record, and that it was given for a balance of account due to him as finally adjusted by the trustees. The plaintiff's counsel also exhibited to the master a statement of his account against the corporation, and insisted the balance appearing due should be considered as the amount due to him. The defendants' counsel insisted that the account, bond and judgment were not conclusive, but that they were at liberty to contest the same. The master further reported that neither the decree nor remittitur expressly directed that the bond and liquidation should be conclusive, nor that the consideration might be inquired into, but left the question whether they were to be treated as conclusive as *prima facie* evidence of the debt, to be ascertained according to the principles of equity. The plaintiff's counsel excepted to the foregoing branch of the report. The chancellor, in disposing of this exception, says the judgment against the company in its corporate character is not binding and conclusive upon the defendants when charged in their private and individual characters, and as by the pleadings sufficient grounds had been laid for opening the account, he authorized the defendants to go into evidence on that subject. From this order there was no appeal to the court of errors, and the foregoing branch of it, as to the effect of the judgment, was affirmed. It will be seen from this abstract of the proceedings that the question whether a judgment against the corporation was conclusive against the stockholders was the only question decided by the chancellor, and hence the only

Strong *v.* Wheaton.

one presented to the court of errors. Whether or not it was *prima facie* evidence could not be before the chancellor, because the defendants yielded to it as *prima facie* before the master, and merely claimed that they should be permitted to go behind it and assail the consideration. What the chief justice may have said as to the effect of the judgment is not very important. If the judgment was not conclusive, the question as to what other weight it might be entitled to as evidence was not before the court, and the remarks of the judge, while entitled to the highest respect, are not binding as authority.

It seems to me, therefore, that the supreme court was at full liberty to decide the question in the 5th Hill, entirely relieved from the case of *Slee* v. *Bloom*, as a binding authority; and having held that the judgment was not even *prima facie* evidence, I am disposed to follow it, until the court of last resort shall declare it erroneous. I am the more willing to follow this course, because the court of appeals in a recent case (the title of which I am unable to give) refused to adopt the supposed doctrine of the case of *Slee* v. *Bloom*, which it seems to me they should have done, if that case is authority on this question.

If we are to examine the question as to whether a judgment against a corporation is *prima facie* evidence against a stockholder, I apprehend it would be found very difficult to support the proposition. If the stockholders are sureties, then they are never bound by a judgment against the principal, unless they have so expressly agreed. If they are to be deemed partners, and liable as such, a judgment against a third party is no more evidence against a partner than against another individual; and although a judgment against one joint debtor is evidence of the amount to be recovered, in a subsequent action against another joint debtor, yet there is neither partnership nor joint liability between the corporation and the stockholder

If the judgment is not evidence, by reason of the existence

of one or other of these relations between the parties, I know of no other relation or position upon which it can be treated as evidence for any purpose. So far as the corporation can be considered the agent of the stockholders, so far is he responsible for its acts. But there is no such relation in the confession of a judgment by the corporation, and surely there can be none where it is recovered adversely.

I am of the opinion that there is no legal proof of an indebtedness to the amount of the judgment.

The names of both defendants are signed to the articles of association. By the 2d section of the general law providing for the incorporation of manufacturing companies, passed in 1848, those signing such articles, and their successors, are declared to be a body corporate. Those who sign these articles must therefore be stockholders, and when the holding of stock is once established it must be presumed to continue, until its surrender or assignment is shown.

I do not see how the question as to the parol admissions of the defendants is of any importance in the case. The holding of stock is abundantly proved without them.

The defendants' counsel insists that as by the 18th section of the general law stockholders are jointly and severally individually liable for debts due by the corporation to its employees, and as it appears by the evidence that there are several stockholders besides the defendants, this action should have been brought against all or only one of such stockholders, and cannot be maintained against two only. Under the former system of pleading, when the action was upon a joint contract, all of the parties liable upon it must be joined, and if not joined the omisssion could only be taken advantage of by plea in abatement. But if it appeared on the face of the declaration or other pleading of the plaintiff that the party omitted was still living, the defendant might demur, move in arrest of judgment or sustain a writ of error. (1 *Chit. Plead.* 29.) When the contract was several as well as joint, the plaintiff might proceed against all or one only of the contract-

Strong *v.* Wheaton.

ing parties. When there were three who were jointly and severally bound, if two only were sued, the objection must be taken by plea in abatement, and was not ground of non-suit. (*Idem, p.* 80.)

A plea in abatement is not admissible under our present practice, and hence defects of parties must be taken advantage of by demurrer, when it appears on the face of the complaint, (*Code*, § 144;) and when the defect does not so appear, by answer. (*Same*, § 147.) The non-joinder in this case appears on the face of the complaint, but it does not appear by it that the person omitted is living, and hence a demurrer would not lie. The answer sets up the non-joinder of one Northrup as a defendant, and it was conceded that he was a stockholder and living. If the common law rule as to the joinder of parties is still in force, the action must fail by reason of the defect thus established. It is said that the rule at common law has been changed by § 120 of the code, which declares that persons severally liable on the same obligation or instrument, including the parties to bills of exchange and promissory notes, may all or any of them be included in the same action, at the option of the plaintiff. In *Brainard* v. *Jones* (11 *How.* 569) it was held that all or any of the persons severally liable on a bond may be joined in the same action, and that § 120 did not apply to parties to bills and notes only. The terms of the section apply to obligations and instruments on which the parties are severally liable. In *Brainard* v. *Jones* the bond sued on was joint and several. The case then applies to and governs this, if the subject matter of the action is an obligation or instrument.

By the use of both terms, it would be fair to presume that the legislature did not intend to cover the same identical cases. The word "instrument" includes every species of writing except obligations. The word obligation must therefore have been intended to embrace those securities known in the law as bonds only, as then both terms mean the same thing. The word "*obligation*" had a well known meaning

in the law, and we must presume the legislature knew what it was, and used it in that sense. *Jacob*, in his Law Dictionary, defines the word "*obligation*" as a bond containing a penalty with a condition annexed for the payment of money, performance of covenants or the like. Obligations may also be by matter of record, as statutes and recognizances.

The word "*obligation*" is from the Latin word "*obligatio*," which *Justinian* defines to be a bond of law by which we are necessarily bound to pay something according to the laws of our country. *Bracton* defines it to be a bond of law by which we are necessarily bound to give or do something. *Burrill*, in his Law Dictionary, defines the word obligation as follows : " Binding force or efficacy ; binding force in law ; a binding or state of being bound in law ; a duty imposed by law, for the fulfillment of which one party is bound to another. An instrument in writing by which a party is bound in law or bond, commonly called a writing obligation." *Lord Coke* says that an obligation is a word of large extent, but is commonly taken, in the common law, for a bond containing a penalty with a condition for payment of money, or to do or suffer some act or thing.

*Webster* defines obligation to be, 1st. The binding power of a law, promise, oath, or contract, or of law, civil, political or moral, independent of a promise ; that which constitutes legal or moral duty, and which renders a person liable to coercion and punishment for neglecting it. 2d. The binding force of civility, kindness or gratitude, when the performance of a duty cannot be enforced by law. 3d. Any act by which a person becomes bound to or for another or to forbear something. 4th. In law, a bond with a condition annexed and a penalty for non-fulfillment.

It will be seen that all these definitions agree that the word obligation, when taken in its legal sense, means a bond or other writing in the nature of a bond, such as statutes merchant and staple, recognizances, &c. If we take the word in its popular signification, as an act by which a person becomes

bound to, or for, another, or to perform something, it will embrace every conceivable liability, written or unwritten, by which one man may be bound to another, and in regard to which there may be a several liability. To give it this extensive signification would produce serious mischief and disorder in the administration of the law. This manufacturing law presents a very apt illustration of the consequences which would result from giving to the word the popular signification alluded to. By § 32, all the stockholders in these companies are severally individually liable to the creditors of the company, to an amount equal to the stock held by them, for all contracts and debts made by such company, until the whole capital is paid in and certificates filed. The court of appeals, in *Corning* v. *McCullough,* (1 *Comst.* 47,) held that the liabilities of stockholders for the debts of a corporation, under a statute similar to the one under consideration, was not created by statute, but was an original and primary obligation against them as partners. If the liability is that of partners, then it arises against all at the same time, but by the statute each stockholder is only liable to the amount of the stock. If then three persons, stockholders, one of whom owns $500 of stock, another $2000, and another $3000, in one of these corporations, are sued for a debt of the company for $1000, judgment must pass against each for a distinct amount, and execution must follow the judgment. Such judgments are admissible in an equity court, but never in a court of law, in a common law action, unless this statute presents such an absurdity. Other cases might be supposed in which the same or similar results would follow the joinder of a part only of those who at common law are liable, or the joining of several, when from the very nature of the case but a single judgment can be rendered. I admit that in an action under the 18th section of the general manufacturing law (under which this action is brought) all the stockholders are liable to the employees for their wages, without reference to the amount of stock held by them, and in such case a judg-

ment may be entered against all the stockholders for the same amount, and the difficulty I have suggested would be avoided. Yet that does not lessen the force of the argument. The statute should not receive a construction which is to introduce confusion into the practice of the courts, unless the language of the statute is so peremptory and the intent so plain that it cannot be avoided.

It seems to me, therefore, that the word obligation must be confined to its legal meaning, and that it does not embrace a cause of action not evidenced by a writing; that the cause of action in this case is not reached by section 120 of the code; and that the action cannot be maintained without bringing in the other defendant.

The judgment ought to be reversed, and a new trial ordered; costs to abide the event.

Ordered accordingly.

[ONONDAGA GENERAL TERM, July 2, 1861. *Bacon, Allen, Mullin* and *Morgan,* Justices.]