## DORRIS v. FRENCH.

*Corporation — may maintain action to recover subscriptions for stock made before organization — fraud of directors toward corporation no defense to such action — issue of stock to other parties a defense.*

When a corporation is formed, it may enforce payment of the subscriptions to its capital stock against persons who subscribed its articles of association before the corporate body had a legal existence, and such stockholders are estopped from denying the lawful existence of the corporation.

The trustees of a corporation, intrusted with the duty of purchasing a patent right, bought it for the corporation of themselves and their associates for the sum of $50,000, while the price which they really paid was only $16,000. *Held*, that this was in violation of their duty toward the corporation, and that they were entitled to make no profit for themselves upon the purchase, but that such fraudulent act constituted no defense to an action by the corporation against a stockholder to recover the amount of stock subscribed for by him.

*Held*, also, that the fact that the stock subscribed for by defendant was issued to other parties would constitute a bar to the action.

MOTION by defendant for a new trial upon case and exceptions ordered to be heard in the first instance at the general term, after a verdict in favor of plaintiff at the circuit.

The action was brought by John N. Dorris, as receiver of the Buffalo Fruit Preserving Company, to recover the sum of $3,000 upon a written instrument signed by the defendant, with other persons, of which the following is a copy:

"BUFFALO FRUIT HOUSE ASSOCIATION.

" We, the undersigned, hereby agree to unite in the formation of a joint-stock or incorporate company for the purpose of purchasing the exclusive right to make, use and vend Nyce's patent for preserving fruit or other products out of season, in Erie county, N. Y., and of erecting a building after the plan of said patent, with a capacity of about twenty thousand (20,000) bushels, and of stocking the same with fruits to be preserved; said building to be built so as to be ready for use by the 1st day of February, 1866. And for such purpose we mutually agree to pay to the treasurer appointed by said company the amount set opposite our names in the following manner: Fifty per cent on demand, twenty-five

per cent on completion of the building, and twenty-five per cent whenever called in by said company. The capital stock of said company shall be $100,000, divided into 1,000 shares of $100 each, with the privilege of increasing the same to $200,000. As soon as $60,000 of the stock shall be subscribed, said company may organize under the laws of this State, and do such other acts as are necessary for an early prosecution of the business for which such company is formed."

This instrument was signed by defendant and others in October, 1865. On the 31st of that month ten of the subscribers to it, including defendant, executed and acknowledged the papers necessary under the statutes to form a corporation, which were filed November 1, 1865. An investment was made in property, and the business of the corporation was for some time carried on. On the 8th of September, 1871, by the judgment of a competent court the corporation was dissolved, and plaintiff was appointed receiver of its effects.

The defendant set up as defenses fraud in obtaining his subscription, and that the stock had been disposed of to other parties. Such other facts as are material appear in the opinion.

*G. A. Scroggs,* for plaintiff.

*H. C. Day,* for defendant.

Present — MULLIN, P. J., E. DARWIN SMITH and GILBERT, JJ.

GILBERT, J. This case is unlike that of *Dorris* v. *Sweeney,* 64 Barb. 636, in this, namely, that the defendant subscribed and acknowledged the certificate of incorporation. The statute authorizing the formation of manufacturing companies (Laws 1848, chap. 40) provides that the persons who shall have signed and acknowledged the certificate, and *their successors,* shall be a body politic and corporate. It requires that the aggregate amount of the capital stock of the company, and the number of shares of which it consists, shall be stated. But it does not require that the interest of the subscribers, respectively, shall be set forth. That must, therefore, necessarily be fixed by some agreement separate from the certificate. Such an agreement, consummated by signing the cer-

tificate, amounts to the same thing as subscribing formal articles of association, preliminary to organizing a corporation. The agreement and the certificate constitute but one transaction, having a single object, namely, the formation of the corporation. It has long been held, and never, I believe, been disputed, that the corporation, when formed, may enforce payments of the subscriptions to its capital stock against persons who subscribed its articles of association, before the corporate body had a legal existence. *Buffalo & Pittsburgh R. R. Co.* v. *Hatch*, 20 N. Y. 161 ; *Burr* v. *Wilcox*, 22 id. 551; *Strong* v. *Wheaton*, 38 Barb. 622; Ang. & Ames on Corp. 517, *et seq.* It was with this rule in view, probably, that the legislature omitted any specific provision regulating the manner of becoming stockholders, while, at the same time, they authorized the capital stock to be paid in, one-half thereof within one year, and the other half within two years, and made the stockholders severally liable for the debts of the corporation to an amount equal to the amount of stock held by them respectively, until the whole amount of capital stock should have been paid in (§ 10), and authorized the corporation to demand from the stockholders, respectively, payment of their subscriptions, on pain of a forfeiture of their stock (§ 6). It is very evident from these provisions that the design of the legislature was to provide protection to creditors by devolving personal liability on the stockholders, and to give to the corporation, for the indemnity of the latter, the power of coercing payments of subscriptions. But neither of these objects could be accomplished unless there were some means of ascertaining who had become stockholders and the amount of stock held by any of them, besides the certificate of incorporation; for that might not show the names of all the stockholders or the amount of stock held by any of them. These facts might be established by proofs of payments on account of stock and the taking of the usual stock certificates, but that kind of proof would not be as satisfactory as the ordinary mode of subscribing, which was adopted in this case. We are of opinion, therefore, that the original liability of the defendant, as a subscriber to the stock, was established.

Stockholders are estopped to deny the lawful existence of corporations which they have helped to create.

These views would require us to direct a judgment in favor of the plaintiff, but there are other facts which demand consideration. Among the defenses pleaded, one was that some of the promot-

ers of the company, who signed the certificate of incorporation, and were named therein as trustees, were intrusted with the duty of purchasing the patent-right under which the business of the company was conducted; that they purchased it, in fact, of themselves and their associates for the corporation for the price of $50,000, whereas the real price was $16,000, and that the difference was divided between them and their associates. This, if true, was a gross fraud, and no proof of an actual intent to cheat, beside the matter itself, in such a case, is requisite to invalidate the transaction. The persons who undertook the duty of purchasing the patent thereby became agents of the corporation for that purpose. The same principles are applicable to them as govern the relation of trustee and *cestui que trust*. They were bound not to do any thing which could place them in a position inconsistent with the interest of their principal. Agents are not permitted to become secret vendors of property which they authorized to buy for their principals in any case, except where there is the most entire good faith and full disclosure of all facts and circumstances, and absence of all undue influence, advantage or imposition. Nor will an agent employed to purchase be permitted, unless by plain and express consent of his principal, to make any profit out of the transaction. Story's Eq. Jur. 315; *Dally* v. *Wonham*, 33 Beav. 154; *Bentley* v. *Craven*, 18 Beav. 75; *Tyrrell* v. *Bank of London*, 10 H. L. Cas. 26; *Beck* v. *Kantorowicz*, 3 K. & J. 230. If those who made the purchase for $16,000 were, at the time, acting as projectors or promoters of the company, they can make no profit at the company's expense by a purchase and re-sale. *Foss* v. *Harbottle*, 2 Hare, 489; *Densmore Oil Co.* v. *Densmore*, 14 P. F. Smith, 49; *McElhenny's Adm'rs* v. *Hubert Oil Co.*, 11 id. 202. The injury occasioned by the alleged fraud, however, was done to the corporation and not to the defendant. It constitutes no defense to an action at law, brought by the corporation or its receiver, to recover his subscription to the capital stock. The only mode of making it available to the defendant would be by a bill in equity, in which the persons accused of the fraud, as well as the corporation, would be necessary parties. The learned judge, however, entertained the defense, and, in submitting the case to the jury, charged them "that the fact that the patent was owned by the promoters of the company at the time the defendant was induced to make his sub-

scription was not a sufficient defense, unless there was evidence that it was suppressed with intent to cheat and defraud." This, we think, was erroneous, and if the defense was before the court, the error was material.

We are also of opinion that the learned judge erred in refusing to submit to the jury the question whether the company had not, with the assent of the defendant, issued the stock, for which he subscribed, to other parties who had received the same and paid the company for it. There is evidence in the case which would have warranted the jury in finding that fact in favor of the defendant, and we have no doubt that, if so found, it would constitute a complete bar to this action.

The motion for a new trial must be granted, with costs to abide the event.

*New trial granted.*