# EXCHANGE BANK *v.* FORD.

*(Supreme Court of Colorado, April 1st, 1884—Error to the District Court of Arapahoe County.)*

1. OBLIGATION, as employed in section 1834 of the General Statutes, and section 14 of the Code (section 13, Code of 1883), does not embrace or apply to oral contracts.

2. CODE—LAW AND EQUITY. The Code abolishes forms of action merely, and provides a single method of pleading. It does not undertake to do away with the distinction between legal and equitable causes of action. It is still the general rule that equitable relief cannot be secured unless an equitable cause of action or defense appear in the pleadings.

3. JUDGMENT AFTER TERM. Except in certain specified cases, the Court has no power to vacate a judgment after the term at which it was rendered.

4. PARTNERSHIP DEBT—MERGER. The equitable doctrine that partnership debts are joint and several, does not obtain in a purely legal action.

HELM, J. This action was brought to collect a partnership debt. At common law partners are held to be jointly liable for the firm debts. While each is bound for the whole indebtedness, and while a judgment might be recovered under some circumstances, in an action at law against one of the partners, yet the liability is regarded as joint only, and not as joint and several.

At common law, therefore, the doctrine of merger, contended for by defendant in error, who was defendant below, would undoubtedly govern this case; and he could plead the judgment rendered against his co-defendants in bar of the proceedings against him for the same demand.

A desire to avoid the hardship resulting from the application of this common law rule to the case at bar, coupled with the general importance of the subject, has led us to give the questions presented more than the usual degree of care and consideration.

The suit was first brought against Ford and others upon a promissory note; Ford's co-defendants defaulted, and judgment was rendered against them; afterwards, and before the trial against Ford, plaintiff voluntarily amended its complaint so as to abandon the note, and rest the action entirely upon the original indebtedness represented thereby. The action

was, therefore, tried against Ford upon an unwritten contract. At the trial the former judgment against his co-defendants was regarded by the Court as a merger of the entire cause of action, and upon this ground plaintiff's right to recover against Ford was denied.

A number of objections to the position taken by the Court below are presented by plaintiff in error, and are thoroughly argued by counsel for both parties. As at present advised, we are inclined to believe that, under our practice, the doctrine of merger might be held inapplicable to the case, provided the contract is one of those which are by statute declared to be several as well as joint.

Bearing directly upon this subject we have two provisions, viz.: Section 1834 of the General Statutes, which reads as follows: "All joint obligations and covenants shall hereafter be taken and held to be joint and several obligations and covenants;" and section 14 of our Code of Procedure, to wit: "All persons jointly or severally liable upon the same obligation or instrument, including parties to bills of exchange and promissory notes, and sureties on the same or separate instruments, may all or any of them be included in the same action, at the option of the plaintiff."

The principal question for consideration, as we view the case, is, do these statutes or does either of them refer to and include joint *oral* contracts; or was it the intention to confine their operation in this respect to joint specialties, and joint simple contracts which are evidenced by writing?

Of course no argument is necessary to show that the words "covenants" and "instruments" do not cover unwritten contracts; our inquiry is, therefore, narrowed to a discovery of the true import of the word "obligation," as used in these statutes.

This word has two well defined legal meanings: one is, where it is a name given to the contract itself; the other includes those cases where it refers to the *duty* imposed upon a person in connection with his contract to perform it, or to a liability arising from his contract or from his actionable tortious conduct.

The first class formerly covered only sealed instruments wherein the obligor was bound under a penalty to do a certain

thing; but more recently it has been frequently extended to all written contracts.

Under the second class, Chief Justice Marshall, in *Sturgis* v. *Crowninshield,* 4 Wheaton, 193, thus defines one meaning of the word: "A contract is an agreement wherein a party undertakes to do or not to do a particular thing; the law binds him to perform his engagement, and this is the *obligation* of the contract."

In illustration of another meaning of the word under this class, we quote the language of Mr. Justice Smith in *Crandall* v. *Bryan,* 15 Howard's Pr. R., 56. Speaking of a certain statute, and referring to the word obligation, used therein, he says that it includes all cases "where the action would not rest upon the *contract,* but would rest upon the legal duty; where the law rests a liability upon a man guilty of fraud, for which an action will lie; whenever fraud and damage give a right of action, the law casts a liability and creates an *obligation.*"

The word is used in statutes as well as in text books and decisions, with these different meanings; and the significance to be given it in each statute, must be gathered from the purpose and context of the enactment. The third, and perhaps most uncommon legal use of the word, is found in a New York law, it reads: "When the defendant has been guilty of *fraud* in contracting the debt or *incurring the obligation* for which the action is brought," etc. 15 Howard, 56, *supra.*

We are hardly prepared to quarrel with the Court's interpretation above given, of this statute. It seems reasonably certain that the Legislature mean, when they speak of the obligation being "incurred," a liability affixed by law to the fraudulent conduct mentioned. *Contracts* are either expressly made by the parties, or created by implication of law. It can hardly be said that they are ever *incurred;* the *liability* is incurred when the contract is violated, or the fraud committed; and when the word "obligation" is used with reference to this liability, the obligation may also be said to be *incurred.*

In *Hargrove et al., admrs.,* v. *Cooke,* 15 Ga., Lumpkin, J., says: "In Comyns' Digest, obligation is defined to be a deed, whereby a man binds himself under a penalty to do a certain thing. But in its more popular sense, the term obligation signifies the instrument of writing by which the contract is witnessed."

So also in Illinois, the expression "obligations and covenants," in a statute exactly similar to our said section 1834, was construed to include a promissory note, and the guarantors thereon. *Gage* v. *Nat. Bank,* 79 Ill., 62.

It has, however, recently been held doubtful if this Illinois statute has any application to partnership contracts. *Coates* v. *Preston et al.,* 105 Ill., 473.

But no case has been cited, and we have not succeeded in finding one, which holds that this word when used in a statute with reference to the contract itself, and not the duty or liability arising thereon, includes oral agreements. *Brainard* v. *Jones et al.,* 11 Howard's Pr. R., 569, seems to hold this way, and has been mentioned by counsel as doing so; but the action there was upon a replevin bond, and it was unnecessary to determine this question; besides, in *Strong* v. *Wheaton,* 38 Barb., 616, this case is discussed, and no such interpretation of the word deduced therefrom.

As the result of our investigation, we feel justified in stating the conclusion that whenever the word obligation is used in a statute as the name of a contract—as it is in the sections now under consideration—an agreement in writing, sealed or unsealed, is referred to; where in a legislative provision it is used with reference to legal duty or liability, such duty or liability may arise from an oral or written contract, or in some instances from actionable tortious conduct.

Counsel for defendant in error, in discussing section 14 of the Code, calls our attention to the fact that throughout that instrument whenever a general indebtedness or liability is mentioned, other expressions are used: As "contract or transaction," "alleged liability," "jointly indebted," "transaction," "contract, sealed or parol," "contract, express or implied," "debts or liabilities," etc.; (see sections 19, 21, 43, 58, 71, 91, 94, etc., etc.) This would seem to indicate that the Legislature had in mind the meaning of the word *obligation* we contend for, and confined it thereto in section 14.

We are not, however, entirely without direct authority in support of our conclusion that the word does not cover oral contracts. The New York statute is similar to our said section 14 in this respect; the Supreme Court of that State, in construing the same, use the following language: "The word ob-

ligation must be confined to its legal meaning, and it does not embrace a cause of action not evidenced by writing." *Strong* v. *Wheaton, supra.* See also, *Barker* v. *Cassidy*, 16 Barb., 184.

Mr. Pomeroy considers at length the statutory provision existing in many of the States that: "Persons severally liable upon the same *obligation or instrument*, including parties to bills of exchange and promissory notes, may all, or any of them, be included in the same action at the option of the plaintiff." He says with reference thereto : "In the third place, there is no limit to the kind of contract from which this several liability may arise, *provided it is in writing.* The broad language of the clause includes any and every species of *written* contract." Pomeroy's Remedies and Remedial Rights, Sec. 404.

This is, of course, not binding authority; it is the view, however, of one of our ablest legal writers.

It is argued, that giving this restrictive meaning to the word "obligation" in said section 14 of the Code, renders the word "instrument" entirely superfluous; that "instrument" includes all written contracts, sealed, as well as simple; and that unless we assent to the proposition that "obligation" includes oral contracts, we violate the rule requiring effect to be given if possible, to all the language used. But the use of the word "obligation," under the common law, was originally confined to sealed instruments of a certain kind; and Courts have not always given it the significance we have adopted.

The Supreme Court of South Carolina held that the statutory phrase, "bonds or other obligations," did not include promissory notes; and that it might be construed as though it read "bonds or other contracts under seal." *Executors of Rippon* v. *Executors of Townsend*, 1 Bay., 445.

In *Gale* v. *Myers*, 4 Houston, 546, the Supreme Court of Delaware decline to consider promissory notes as included in the statutory expression, "An obligation or written contract." There are doubtless other cases like these, and in them we discover a reason for the Legislature's using both of these words, and also expressly declaring that "bills of exchange and promissory notes" are included thereby. Owing to the doubts surrounding the subject, and inspired by an abundance of caution, the Legislature saw fit to use both words, and also to add

the explanatory phrase. In so doing, we think, as was said by the Supreme Court of Georgia, concerning a similar expression, "they were guilty of no vain repetition." *Hasgrove* v. *Cooke, supra.*

But the doctrine that in equity, without statutory provision, partnership debts are both joint and several, is claimed by defendant in error to cover this case.

This is purely a legal action; it is in the nature of assumpsit; no cause of action in equity is stated, and no equitable relief is demanded by either party. The Code abolishes *forms* of actions merely including the difference in this respect between actions at law and suits in equity, and provides a single method of pleading; it does not undertake to do away with the distinction between legal and equitable *causes* of action; it does not rescind the rule that the allegation and the proof must correspond, nor the correlative principle, that the judgment must follow the pleadings. To procure standing in a Court of equity and obtain equitable relief, the pleader must still state an equitable cause of action or defense. He cannot now, any more than he could before the Code was adopted, obtain the benefit in a Court of law of principles like the one here invoked, which theretofore applied exclusively to chancery proceedings.

These remarks do not cover instances where some equitable principle has been by express statutory language or by clear implication incorporated into procedure at law. Nor do we assert that no case can ever arise wherein a party may have the benefit of a defense not presented by the pleadings, or waive objection to a variance between the pleadings and the proof and judgment.

We are of the opinion that the foregoing equity doctrine does not apply to this case.

The last position taken by counsel for plaintiff in error which we shall consider, is, that the Court erred at the trial in refusing to set aside the judgment previously taken against Ford's co-defendants.

The judgment which plaintiff moved to vacate was rendered over two years prior to this trial; a number of terms of the Court had passed since the one at which it was entered; it was in plaintiff's favor, and was given upon its applicaiton

The motion to vacate came from plaintiff, and was not based upon any want or defect of jurisdiction, save as hereinafter mentioned; no fraud or collusion, and no irregular or improper conduct on the part of the defendants in procuring the judgment to be entered, was charged.

Defendant Ford pleaded this judgment in bar in his answer to the amended complaint; to this answer no reply, demurrer or motion was filed. The application to vacate was not interposed until the trial was in progress, and until plaintiff had rested, and defendant had offered the judgment in evidence on his defense.

The motion to vacate seems to rest mainly upon the ground that the judgment was rendered after jurisdiction had been divested by the filing of the petition and bond for removal to the Federal Court, and was therefore void. The record itself does not bear out plaintiff's assertion in this respect; it appears that the judgment was given, and the petition and bond were filed on the same day; but the record entry of the former precedes that of the latter, and we infer therefrom that this was the order in which the acts took place.

It cannot be said that the judgment in question is void, even if we admit the correctness of counsel's position, that under the view we adopt as to the word obligation, judgment on unwritten joint contracts against one joint defendant, without a determination of the cause as to the others, is irregular and void. At the time this judgment was pronounced, the action was upon a promissory note; the liability upon this instrument was clearly rendered several by section 1834, *ante;* under section 146 of the Code, we are of opinion that as the case then stood, judgment might properly be taken against one defendant, and the cause continue as to another.

The abandonment of the promissory note and subsequent precedure upon the original indebtedness was, as already remarked, plaintiff's own voluntary act.

Plaintiff should have interposed its application for relief from the former judgment prior to the trial against Ford. But it is doubtful if this application would have availed anything had it then been made, upon any ground that could truthfully have been stated. Courts have very limited discretionary power, except for a few well known causes, to vacate

or amend their judgments at a term subsequent to the rendition thereof. No authorities need be cited to the proposition that in the absence of statute, judgments regularly entered are beyond the Court's control after the term has expired. A judgment procured by fraud or by irregular or improper conduct of the successful party, or one entered without jurisdiction of the person against whom it is given, can hardly be said to be *regularly* entered. These, therefore, constitute grounds on which, upon proper showing, Courts *sometimes* presume to act at a subsequent term.

Section 75 of the Code provides for relief from a judgment taken *against* a party through "mistake, inadvertance, surprise or excusable neglect." But this relief is only granted upon terms, and the showing therefor must be made in the manner pointed out by statute; if in vacation, it must be within five months after adjournment, and satisfactory reason must be given for not applying during the term.

Plaintiff in error, as clearly appears from what we have said, was not in a position to secure the advantage of any of the foregoing reasons or grounds in support of its motion.

We do not think the Court erred in overruling the same.

*The judgment must be affirmed.*

*Willard Teller, C. J. Hughes, Morrison & Fillius,* for plaintiff in error.

*M. B. Carpenter,* for defendant in error.