[No. 3674.]

THOMPSON, EXECUTRIX, v. WHITE.

1. ATTACHMENT—SERVICE OF WRIT—JURISDICTION.

In the absence of a general appearance by the defendant, an attachment lien does not become effective and enforceable until the attachment writ has been properly and completely served; and proper service includes the delivery of a copy of the writ to the attachment defendant, if he be a resident; and without such service the court acquires no jurisdiction to order a sale of the attached property.

2. ATTACHMENT—DEATH OF DEFENDANT BEFORE SERVICE.

In an action against a resident defendant where an attachment had been levied upon real estate by filing a copy of the writ together with a description of the property with the recorder, but the defendant died before a copy of the writ was delivered to him, the attachment lien could not be perfected by service upon the executrix of the deceased defendant, nor by her general appearance in the action.

3. PARTNERSHIP — CONTRACTS — JOINT AND SEVERAL — STATUTORY CONSTRUCTION.

Mills' Ann. Stats. sec. 2528, declaring all joint obligations to be joint and several, and sec. 13, code, authorizing an action to be brought against any one or more persons jointly or severally liable upon the same obligation, do not apply to partnership obligations. An action cannot be maintained against the executor or administrator of a deceased partner upon a partnership contract, whether such contract be written or oral, unless it be shown that the partnership has been finally settled, and that the partnership assets are insufficient to pay the firm debts.

4. PLEADING—REPLICATION—CHANGE OF CAUSE OF ACTION.

A plaintiff, against defendant's objection, cannot by a replication, any more than by amendment to a complaint, change the cause of action as stated in the original complaint from a legal to an equitable one, or *vice versa.*

5. ESTATE OF DECEDENT—CLAIM—FAILURE TO EXHIBIT.

A creditor who instead of exhibiting his claim against the estate of a decedent in the county court, as the law requires, elects to prosecute his suit in the district court, and to have his judgment, if any,

satisfied exclusively out of property sought to be attached, loses all right to a distributive share in the inventoried property of the estate.

*Error to the District Court of San Juan County.*

THE original complaint was filed in the district court of San Juan county on August 6, 1890, and contained eleven separate causes of action,—seven upon promissory notes, two on overdue book accounts, and two on time checks assigned to the plaintiff. To the action L. C. Thompson and F. L. Thompson were made defendants.

On the same day a writ of attachment was sued out, and five days thereafter returned into court with the sheriff's indorsement thereon to the effect that he had taken into his possession certain personal property of the defendants, and attached certain of their real estate, describing it.

The cause was continued over the September, 1890, term of the court, and at the following May term the plaintiff suggested the death of L. C. Thompson since the beginning of the action, and the appointment by the county court of Fremont county of Nannie C. Thompson as his executrix under his last will and testament, and she was thereupon substituted as a defendant in place of her deceased husband.

At the September, 1891, term judgment was rendered against F. L. Thompson, one of the original defendants, and Nannie C. Thompson, as executrix; and at the same term, and within three or four days thereafter F. L. Thompson entered a special appearance, and moved the court to set aside the judgment as to him on the ground that it was improvidently entered, and the court set aside the judgment as to both defendants; whereupon the plaintiff dismissed the action as to F. L. Thompson, and moved for judgment against the executrix upon the findings of fact theretofore made, which was granted.

At the September, 1892, term defendant moved to set aside this judgment against the executrix, as having been improvidently entered, there having been no service of process upon her, and the court made the order accordingly. The plain-

tiff then obtained a certified copy of the order substituting
Nannie C. Thompson as executrix in the place of her deceased
husband, and had the same served upon her April 13, 1893,
which was her first notice of the pendency of the action.

Upon leave of court the plaintiff, at the September, 1893,
term of the court, filed an amended complaint differing from
the original complaint only in that there were in the amended
pleading allegations of the death of L. C. Thompson and the
appointment of his widow as executrix and her entrance up-
on the duties of administration.    Shortly after being made a
party, the executrix moved to dissolve the attachment upon va-
rious grounds, and filed to the amended complaint her amended
answer containing a number of defenses.    To the amended
answer the plaintiff filed a motion to strike certain portions,
and a replication to the balance, and to this replication the
defendant filed a motion to strike.    The various grounds of
these different motions, and the several defenses interposed
in the amended answer, and the matter set forth in the rep-
lication, are too voluminous for specification here.    Besides,
in the view taken by the court of the case, it becomes neces-
sary to consider only two of the errors assigned, and they
are sufficiently stated in the opinion.

After the record was removed into this court the defend-
ant in error asked for, and obtained, an order permitting him
to make an application in the district court to have the re-
turn of the sheriff to the writ of attachment amended, and
upon its presentation to the lower court the sheriff was allowed
to, and did, amend his return, so that now it is to the effect
that he took into his possession certain personal property of
the defendants and attached the real estate described in the
return by filing with the county clerk and recorder a copy
of the writ of attachment with a description of the real prop-
erty attached.    It nowhere appears in the record that a copy
of the writ of attachment was ever served upon any of the
defendants in this action, but, on the contrary, it appears
that it was not so served.

There was a trial to the court without a jury, findings of

fact were made in favor of the plaintiff, and judgment was rendered against the defendant, as executrix, to be satisfied, however, only out of the property seized and held under the writ of attachment, and special execution was ordered for the. sale of the attached property. To reverse this judgment is the object of this writ of error by the defendant.

Messrs. BARNES & BARNES, for plaintiff in error; Mr. CHARLES E. GAST and Messrs. BUCHANAN & SEARCY, *amici curiæ.*

Mr. ADAIR WILSON, Mr. REESE McCLOSKEY and Messrs. RIDDELL & STARKWEATHER, for defendant in error.

CHIEF JUSTICE CAMPBELL (after stating the facts) delivered the opinion of the court.

Twenty-six errors are assigned by plaintiff in error, and all of them are argued by counsel on both sides with thoroughness and marked ability. Many of the questions discussed are important, and, if necessary to pass upon all of them, our task would be difficult. The defendant in error himself admits, in argument, that the judgment upon several of the causes of action was improper, and that errors in the computation of interest were made. Two of the questions presented go to the very heart of the controversy, and the resolution of one of them against defendant in error, destroying the lien of his attachment, and of the other requiring a reversal of the judgment and a dismissal of the action, renders unnecessary a determination of the other interesting legal propositions so ably presented. Aside from the effect of admitted errors, our conclusion upon these two effectually disposes of the entire action.

Among the points raised but not determined are, that the death of the defendant in an attachment suit before final judgment dissolves the attachment; that the pendency of this action at decedent's death is not equivalent to exhibiting

the claim; that the claim sued upon is barred by the statute of nonclaims found in the probate law; that the alleged lien of the attachment fell with the repeal of the ground of attachment upon which the present writ was based.

Expressly disclaiming any expression of opinion upon these and other errors assigned but not discussed, but for the purposes of the opinion only assuming, with defendant in error, that his position with reference to them is correct, we proceed to a consideration of the two propositions that are fatal to a recovery in this action: *first*, the failure to deliver a copy of the attachment writ to the defendant L. C. Thompson, left the district court without jurisdiction to render a judgment for the sale of the attached property; *second*, a large part of the indebtedness sued for was contracted by L. C. Thompson and F. L. Thompson as copartners, and as to such indebtedness the judgment could not go against the estate of L. C. Thompson without certain proofs wholly lacking in the record.

The decisions are in conflict as to the effect upon an attachment lien of the death of the defendant before judgment. *Waitt v. Thompson*, 43 N. H. 161 (s. c. 80 Amer. Decisions, 136, where the authorities are collated). As to this branch of the case we might concede that, if a valid lien existed during the lifetime of L. C. Thompson, it might be enforced, under our practice, by the substitution of his executrix as a party defendant, and the subsequent rendition of a judgment against her in her representative capacity in favor of the plaintiff. Civil Code, sec. 15. The inquiry then is, how, under our statutes, when the defendant has not entered a general appearance, can a valid and effective lien by attachment be acquired?

Real property standing upon the records of the county in the name of the defendant is attached by filing with the recorder of the county a copy of the writ, together with a description of the property attached, and by serving a copy of the writ upon the defendant in person. Civil Code, secs. 97, 104. These sections have been construed by this court in

the case of *G. W. M. Co. v. W. of A. M. Co.*, 12 Colo. 46, where, among other things, it is said:

"The mere levy of an attachment did not give the court jurisdiction to determine the question of indebtedness and condemn the attached property to pay the same. * * * Where a defendant resides in this state, and there is no question but that he can be personally served, the service is complete when a copy of the writ is served upon him, and the property levied upon. Then, and not until then, does the court acquire jurisdiction to finally hear and determine the same."

Upon rehearing Mr. Justice Hayt, speaking for the court, said:

"Whatever rule may obtain in other localities upon the question of acquiring jurisdiction solely by the levy of the writ of attachment, we are of the opinion that, under our statute, there must be further notice and opportunity given for a hearing before condemnation."

At the same term was decided the case of *Raynolds v. Ray*, 12 Colo. 108, where Mr. Justice Elliott, speaking for the court, says:

"We are of opinion that by filing a copy of the writ of attachment, together with a description of the property to be attached, with the recorder of the county, a valid levy was made, and that a valid lien upon the property was thereby created. * * * By the levy under a writ of attachment before the service thereof, the plaintiff acquires a *provisional* lien upon the property levied on; but, before a valid judgment can be rendered by which the attachment lien is preserved and made effective, *there must be proper service of the summons and the writ of attachment.*"

Chief Justice Beck dissented upon the ground that not even a provisional lien could be secured unless a copy of the writ was also served upon the defendant, in addition to filing a copy with the recorder. All of the judges, however, concur in the holding that the court does not obtain jurisdiction to render a valid judgment, and thus preserve and make

effective the lien, until the complete service of the writ is
had; and in the former case cited proper and full service was
held to mean service upon the defendant personally, if a resi-
dent, and filing with the county recorder a copy of the writ
together with a description of the property sought to be at-
tached.

In harmony with this view is the case of *Graham v. Reno*,
5 Colo. App. 330, where the court held that an action for the
wrongful levy of a writ of attachment would not lie unless,
among other things, a service of the writ was had upon the
attachment debtor.    The effect of these decisions is that, in
the absence of a general appearance by defendant, an attach-
ment lien does not become valid and effective and enforceable
until the attachment writ is properly and completely served,
and proper service includes delivery of a copy of the writ to
the attachment defendant, and filing a copy with the recorder;
and that no judgment establishing the lien, or ordering a sale
of the property, is valid without such service, or without a
general appearance, if that does away with the necessity for
service.    In other words, no jurisdiction to order a sale of
the property exists until a *levy* of the attachment is made,
which consists of delivering a copy, together with a descrip-
tion of the property sought to be attached, to the recorder,
and until the writ is *served* by delivering a copy to the de-
fendant, if he is a resident, or the equivalent of such service
if such be the effect of a general appearance.

Section 96 of the code provides, *inter alia*, that " the de-
fendant shall also be deemed to have due notice of the attach-
ment when he enters a general appearance."    In the opinion,
as originally prepared was an expression concerning the effect
of a general appearance by defendant, and we said that this
would not obviate the necessity of delivering to him a copy
of the writ of attachment.

Our attention was not then specifically called to the fore-
going language of section 96; but on rehearing counsel for
appellee have referred us to it, and suggested that our holding
on this point was error.    Upon further reflection we withdraw

any expression of opinion, one way or the other, as to whether or not the entering of a general appearance by the defendant is equivalent to complete service on him of the writ of attachment, and renders the latter unnecessary, because that question is not in this case, and the construction of sections 96, 97 and 104 of the code upon this point, which must determine the question, should be postponed till a case requiring it is before us.

It is clear from the record that the attachment lien was not thus perfected during the lifetime of L. C. Thompson, and it therefore follows that, had he lived, the court could not, in the present state of the record, have pronounced a judgment ordering a sale of the property sought to be attached. The defendant in error apparently concedes this proposition, but says inasmuch as the cause of action was one that survived, the lien might be perfected through a service of the attachment writ upon, or waiver of its service by, the executrix. The executrix did enter a general appearance in the action, and filed her answer, and defendant in error maintains that by so doing she waived service of a copy of the writ of attachment upon her testator, and gave the court jurisdiction to pronounce judgment condemning the property to sale.

Before entering a general appearance, she specially appeared and moved to quash the writ of attachment and release therefrom the property sought to be impressed with the lien, upon the ground, *inter alia*, that the lien was not perfected by proper service of the writ, or its equivalent, upon the defendant, her testator, during his lifetime, and could not be perfected after his death. She thereby did everything within her power to protect the estate, and is now in position to question the order of the court in overruling her motion to quash, and her general appearance, evidenced by the subsequent filing of an answer, did not cure the omission to complete service of the writ on the original defendant.

Suppose the lien was the result of a contract, as a mortgage, and through some failure of the mortgagee to comply with a statutory provision, compliance with which was made

essential to the validity of the mortgage, the mortgage was
not enforceable as against unsecured creditors of the mort-
gagor.   It would not be contended that after the mortgagor's
death, through some contract or understanding between his
personal representative and the mortgagee, vitality could be
imparted to the mortgage, and the mortgagee given a prefer-
ence over unsecured creditors of the estate.   The lien sought
to be enforced in this action is *in invitum*, and certainly if a
lien created by contract may not thus be perfected after the
death of the testator, an attachment lien, whose enforceabil-
ity depends upon a strict compliance with the statute (which
was not observed here), cannot be secured.

The very instant L. C. Thompson died, his entire property
in its then existing condition, passed, under our law, under
the control and administration of the county court, sitting
as a court of probate, to be disposed of as the law regulating
the administration of the estates of deceased persons pro-
vides.   It is a mistake to designate the inchoate, or provi-
sional, lien of this attachment as a valid or enforceable lien..
The rights of creditors, heirs and devisees attached to this
property at once upon the death of the testator, and the
same must be disposed of, precisely as it was left at the tes-
tator's death.   It was beyond the power of the court, and
equally impossible for the executrix, to disturb the rights of
the persons thus attaching to this property.   She could not
enable any creditor to perfect or complete a lien or right
which he did not have at the time of the decease of the tes-
tator.   To hold otherwise would be equivalent to declaring
that after the death of a testator or intestate one creditor
may, in a suit in the first instance brought against the per-
sonal representative, acquire a lien or preference over other
creditors which the law itself does not give.   See, also, in
addition to the foregoing authorities, Wade on Attachments,.
§ 126.

Moreover, we might be justified in deciding that the un-
explained laches and unreasonable delay of plaintiff in bring-
ing the executrix into court and in obtaining judgment and

execution, operated as a loss of the provisional lien he obtained.

2. The evidence sufficiently shows that a large part of the claim in suit was for a partnership debt. The causes of action alleged are purely legal in character, and the original defendants were sued in their individual, and not partnership, capacity. The defendant in error admits the general rule to be that an action at law for a firm debt must be brought against the firm, or the surviving members; and that if, in equity, it is sought to do otherwise, there must be allegation and proof of a final settlement and that the partnership assets are insufficient to pay the firm debts. But it is insisted that when this doctrine has been applied in this jurisdiction, the question has always arisen upon general accounts against partnerships, and not upon written instruments for the payment of money. The exact question, as it is said, which we are called upon to determine is whether an action on a promissory note, or other written instrument, executed by a firm, and evidencing a firm debt, can be maintained against one only of the partners; or, to make the question specific, can this action for a portion of the firm debt, evidenced by promissory notes, and containing legal causes of action only, be maintained against the estate of a deceased partner?

Bearing upon this branch of the case are sections 25 and 28 of Mills' Ann. Stats. and 13 of the civil code. The former provides: "All joint obligations and covenants shall hereafter be taken and held to be joint and several obligations and covenants." The latter is:

"Persons jointly or severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and sureties on the same or separate instruments, may all or any of them be included in the same action, at the option of the plaintiff."

The states of Arkansas, Missouri, Iowa, North Carolina, and Kentucky have code provisions similar to ours, and in the supreme courts of these states there are decisions, some to the effect that an action upon a promissory note, executed

by two or more joint promisors, and others that an action upon open accounts against such persons, may be maintained against one or more of them at the plaintiff's election, whether the signers are merely joint promisors or copartners. *Hamilton v. Buxton*, 6 Ark. 24; *Ryerson v. Hendrie*, 22 Ia. 480; *Gates v. Watson*, 54 Mo. 585; *Simpson v. Schulte*, 21 Mo. App. 630; *Lowe v. Electric Springs Co.*, 47 Mo. 426; *Merwin v. Ballard*, 65 N. C. 168; *Williams v. Rogers*, 14 Bush, 776; Bliss on Code Pleadings (3d ed.), §§ 62, 105–107, 265, *et seq.*

In the *Ryerson* case, *supra*, that eminent jurist Justice Dillon writes a vigorous dissenting opinion showing the objections to the doctrine laid down by the majority of the court as applicable to partnership contracts. In the *Simpson* case, *supra*, the Missouri court of appeals in its reasoning declares that because preference has generally been given to the creditors of a firm it by no means follows that the partnership assets must be exhausted for the satisfaction of partnership debts before the individual estate of a partner can be proceeded against; which statement of the law is in direct conflict with the decisions of this court.

Whether in the other states mentioned a rule different from the established doctrine of this court in relation to partnership contracts and the payment of partnership debts is, or is not, in force we are not advised. If a different doctrine does prevail, that, in a measure, may account for the difference in the decisions upon the question now under consideration.

In *Charles v. Eshleman*, 5 Colo. 107, the rule as announced in Illinois is followed that if there is partnership property, and also separate property of a deceased partner, the partnership debts are to be paid out of the proceeds of the joint estate, and the individual debts out of the proceeds of the separate estate, and that no claim should be allowed against the estate of a deceased partner for a partnership debt till it is shown that all the partnership assets have been exhausted.

In *Exchange Bank v. Ford*, 7 Colo. 314, it was held that neither of the sections above quoted refers to joint oral con-

tracts, and while not necessary to that decision, the intimation was that a partnership debt evidenced by a promissory note came within their provisions.

In *Craig v. Smith*, 10 Colo. 220, it is said: " This action was brought against the firm of Broad & Craig to collect an alleged partnership debt. Judgment was rendered against Craig, the partner served with process, as if for an individual debt.

" The evidence is not before us. Whether it established a debt against the firm, a joint liability of Craig and the firm, or simply a personal liability on the part of Craig, it was error to render judgment against Craig alone, because he was not a party to the suit. Freem. Judg. § 141, and cases cited. Craig was served with process solely as a partner, and as a partner he responded and defended. His objection to individual liability through a personal judgment could not have been interposed earlier in the proceedings than it was, because prior to judgment there may have been nothing to apprise him of an intention to hold him for the amount recovered, except as he might be held through a judgment against the firm. The individual property of Craig, as one of the partners, aside from his interest in the partnership property, might, under proper circumstances, be subjected to the payment of a partnership debt, but this fact does not affect his right to have the judgment for a firm debt entered against the firm, and the whole partnership property thus made liable for such debt; nor can it render valid a judgment against one not a party to the record."

*Beaton v. Wade*, 14 Colo. 4, was an action by a creditor against the estate of a deceased partner for an amount he claimed to be due from the firm. In speaking to the point whether the suit could be maintained, the court says: " The record nowhere advises us that the firm assets in the hands of the surviving partner were not sufficient to satisfy plaintiff's demand. But, so long as the partnership assets are ample, a debt of the firm *ex contractu* cannot be made out of the separate estate of a deceased partner." In line with these

decisions are *Savard v. Herbert*, 1 Colo. App. 445, and *Esbensen v. Hover*, 3 Colo. App. 467.

The opinions in all of the cases cited from our own reports were handed down after both the statutory and code provisions were in force. It is to be observed that in the *Exchange Bank* case it was held that joint oral contracts were not included in either of the provisions, and in the *Beaton* case that a firm debt *ex contractu* could not be paid out of the separate estate of a deceased partner when there were partnership assets for its satisfaction. While it is true that in all these cases the actions were upon oral contracts, the grounds on which the decisions were based (except in the *Exchange Bank* case) apply equally to written contracts. The effect of all these decisions, it would seem, is to exclude partnership contracts from the purview of our statutes, and, indeed, our decisions cannot logically be upheld as laying down correct doctrine if partnership contracts are included, because, if a firm debt cannot be paid out of the separate property of a deceased partner except upon a certain contingency, the partnership contract does not impose an absolutely several liability. This is apparent, when it is considered that, if the liability is unqualifiedly joint and several, then the contract could be satisfied at once out of the firm assets or the separate estate of either partner, at the option of the obligee. In *Coates v. Preston*, 105 Ill. 470, doubt is cast upon the applicability of this statute to partnership contracts; and whatever may be said of our previous decisions, their effect certainly is to exclude partnership contracts from the provisions of the two sections quoted.

In the enforcement of partnership contracts, unless some statute imperatively requires it, there ought not to be two rules, one applicable to a case where the firm obligation is evidenced by writing, and another rule governing when it is upon an open or current account; for when a judgment is rendered upon either, the original obligation becomes merged in the judgment, and the rule that the individual estate of one partner may not be resorted to for the satisfaction of a firm debt is just as much violated when the judgment recov-

ered is upon a promissory note as if the original claim was a book account.

The objection, then, to maintaining this action lies deeper than any mere rule of procedure, and is based upon the equitable principle of the law of partnership prevailing in this state. Were it not for these statutes, it is conceded that an action, even upon a written instrument, would not lie, for the obligation then would be strictly joint, and not several. It would be an anomalous holding that would permit a judgment upon a written instrument to be satisfied out of the individual property of a partner, and not permit a like satisfaction when the claim was not so evidenced.

In this jurisdiction, therefore, authority to proceed against the estate of a deceased partner for a firm debt, whether the debt is evidenced by a writing or rests in parol, is not by virtue of either of these statutory provisions, but is to be found in the equitable rule as modified by the decisions of the courts of New York, Illinois, Colorado, and possibly other states. In addition to authorities cited, see *Voorhis v. Childs*, 17 N. Y. 354, *Richter v. Poppenhausen*, 42 N. Y. 373, *Pope v. Cole*, 55 N. Y. 124, and Bliss on Code Pleadings, § 107.

Under this modified rule, the action is strictly equitable in character, and to maintain it the plaintiff by allegation must aver, and by proof show, the facts which, in equity, make the individual estate of a deceased partner liable for firm debts; or, in other words, the facts which convert into an absolutely several partnership liability what theretofore was only a joint liability with the legal incidents which, in certain contingencies, become several.

This being a purely legal action counting upon promissory notes, book accounts and time checks alleged to be owed by two defendants in their individual capacity, not only is the essential allegation absent, but proof of the required facts could not be made. In the *Exchange Bank* case which, like the one at bar, was an action stating a purely legal cause of action, this was expressly ruled; the court remarking that

the code abolishes forms of action merely, but not the distinction between legal and equitable causes of action.

This rule apparently was present to the mind of plaintiff's counsel when settling the issues, for when the defendant in her answer averred that the debts sued upon were those of a partnership, he filed a replication alleging that, if so, the firm has never been possessed of any partnership assets out of which the demands in suit could be satisfied.

To this portion of the replication defendant filed a motion to strike upon the ground that it was a departure from the complaint. The court, however, overruled the objection. In this it was wrong; for it is clear that the new matter set up in the replication was an attempt to bring the case within the equitable principle announced, and a plaintiff may not, by a replication, any more than by amendment to a complaint, change the cause of action as stated in the original complaint from a legal to an equitable one, or *vice versa*. *Givens v. Wheeler*, 5 Colo. 598; s. c. 6 Colo. 149; *U. P. Ry. Co. v. Sternberg*, 13 Colo. 141.

But if a new cause of action was not set up in the replication, there is an entire absence of evidence to sustain it. By failing to exhibit in the county court his claim against the estate, as required by the statute, and, in lieu thereof, electing, as he might, to prosecute in the district court this action and have his judgment, if any, satisfied exclusively out of the property sought to be attached, plaintiff has lost all right to a distributive share in the inventoried property of the estate, of which the real estate covered by the attachment writ was a part. *Reid v. Sullivan*, 20 Colo. 498.

Our conclusion upon the one branch of the case being that this judgment was improperly rendered as to such part of the claim as was for firm debts, and upon the other branch that jurisdiction was not vested in, and upon this record could not be acquired by, the trial court to order a sale of the attached property, it follows that the judgment should be reversed and the cause remanded with instructions to dismiss the action as against the executrix, and it is so ordered.

*Reversed.*