FILLMORE ET AL. V. WELLS ET AL.

1. In Colorado attorney's fees are not taxable; they are regulated by contract between him and his client.

2. The attorney's statutory lien upon a judgment covers all fees, or balances of fees, due for services previously rendered his client, whether the amount of such fees has been agreed upon or is to be settled in a suit, as upon a *quantum meruit*.

3. Such lien reaches the fruits of a judgment relating to realty as well as the fruits of money judgments.

4. The attorney may waive his right to the benefit of his lien; and, if without notice that he intends to enforce the same, an innocent third person purchases the realty covered by the judgment, or the judgment debtor make a *bona fide* settlement of the judgment, the attorney cannot hold the realty on the one hand, or look to the debtor on the other.

5. A suit may be brought in equity for the enforcement of this lien, and the amount of the attorney's compensation, together with controversies relating to the contract of employment, may be determined in such suit.

6. The attorney's lien attaches under the statute, even though the land recovered by the judgment becomes part of a trust estate belonging to wards, and suit may be brought directly against this part of the trust estate, without first obtaining individual judgments against the guardians.

7. It is not error to receive testimony of plaintiffs to facts occurring subsequent to the decease of the defendants' ancestor.

8. The court exercises a sound discretion, without adhering to any inflexible rule in determining whether there has been a misjoinder of parties in equity.

9. Where an alleged misjoinder appears on the face of the complaint, the defendant, by answering over and going to trial, waives the right to be heard upon the error, if any, in overruling the demurrer.

*Appeal from District Court, Arapahoe County.*

IN the year 1875, Wells & Smith, attorneys at law, instituted a suit in equity in behalf of John Norman and John Septer Fillmore, then minor heirs of John S. Fillmore, deceased, against John J. Reithman, to recover certain premises situated in the city of Denver, and also rents and profits wrongfully collected and withheld. They were employed for this purpose by the guardian of said minor heirs. Various steps were taken in the suit,

extending through a series of years, but finally terminating successfully. In the year 1880 a decree was entered finding the plaintiffs, the said heirs, entitled to the undivided one-half interest of the premises in controversy, and also to the sum of $7,998.71 as their share of the rents previously accruing therefrom. The case was taken to the supreme court, both by appeal and error; and the said attorneys, together with Macon (who had some years previously become a member of the firm, and participated in the proceedings), conducted both appellate cases for the heirs. During the spring of 1882 the decree of the lower court was affirmed.

The guardian at the time suit was instituted was Elizabeth M. Kershow. While the suit was pending she resigned said office, and S. Beulow Irwin became her successor. Afterwards the said Irwin resigned, and Levin C. Charles became his successor. Finally the said Charles also resigned, and the defendant Patterson succeeded to the guardianship of the wards. The complaint alleges that the employment of plaintiffs as attorneys by Kershow was duly recognized, and continued by each of the succeeding guardians, including the said Patterson. A small retainer of $250 was paid to Wells & Smith before the institution of the proceedings above described, but no other fee or compensation of any kind whatever has been received by them, or by Wells, Smith & Macon.

On the 1st day of November, A. D. 1882, plaintiffs instituted this suit in equity, making the said guardian, Patterson, and the said wards, also the said Reithman, parties defendant. They seek to have the amount of their fees or compensation determined, and also to have the same adjudged a lien upon the sum to be paid by Reithman under the decree, and upon the realty recovered as above stated, through their exertions. A reference was had by consent. The proofs were taken and reported, together with findings and a decree awarding plaintiffs Wells & Smith the sum of $500, and Wells,

Smith & Macon the sum of $5,500; also recognizing an attorney's lien, under the statute, upon the judgment or decree rendered in the former suit; and providing that the said Reithman pay into court, for the benefit of plaintiffs, the said sum of $6,000; that, upon his failure so to do, execution should issue, and, if the amount were not made out of his estate, then the premises so recovered as aforesaid by the wards should be sold by the sheriff to pay the same. The findings and decree, after full examination, were duly approved and entered as the findings and decree of the district court. From that decree the present appeal is taken.

A demurrer to the complaint was at the proper stage of the proceedings overruled. The grounds of the demurrer argued in the supreme court were: The misjoinder of parties plaintiff, and the misjoinder of causes of action; also the non-joinder of proper parties defendant, to wit, the three guardians who served as such, and passed out of office prior to the institution of the present suit, and also prior to the conclusion of the former suit in equity.

The law relating to attorney's liens, under which this action was brought, is section 85, General Statutes. It reads as follows: "All attorneys and counselors at law shall have a lien upon any money or property in their hands, or upon any judgment they may have attained [obtained] belonging to any client, for any fee or balance of fees due, or any professional service rendered by them in any court of this state; which said lien may be enforced by the proper civil action."

All remaining facts essential to a correct understanding of the case are sufficiently stated in the opinion.

Mr. H. C. DILLON, for appellants.

Messrs. WELLS, SMITH and MACON, for appellees.

HELM, J.  The nature and scope of the attorney's lien at common law have been considered in a large number

of cases. Upon some of the various questions involved in such consideration there is no little contrariety of judicial opinion. But this lien in Colorado is regulated by statute; and several of the matters upon which such diversity of opinion exists are thus effectively put at rest.

Our statute recognizes both the general and special branches of the attorney's lien as it was enforced at the common law; but in some important particulars this lien under the statute is much more complete and satisfactory than it is at the common law. The statutory lien is not limited to costs or to *taxable* fees. It reaches all fees due for services rendered, whether the amount of such fees has been agreed upon, or is to be settled in suit as upon a *quantum meruit*. Nor is it limited to compensation for services rendered by the attorney in procuring the judgment upon which he relies. In this respect it is more comprehensive than the mechanic's lien; it covers a balance legally due him for any and all professional services theretofore rendered his client. While the meaning of the statute in these respects is clear, some other matters connected with the principal subject are not left wholly free from doubt. Counsel for appellant have succeeded in presenting several questions that are both interesting and perplexing. These questions will be briefly considered in their appropriate order.

*First.* Does the lien given by this statute upon judgments include a decree awarding plaintiff an interest in lands, and thus subject the realty recovered to the payment of the attorney's fee ?

There are a few decisions which seem to sustain the attorney's right to look, through his lien, to the land for his taxable fees, in such cases; but the weight of authority undoubtedly sanctions the proposition of counsel for appellant, that no such privilege is awarded by the common law. Whether the discrimination thus made in favor of money judgments is based upon satisfactory

reason or sound principle, we need only consider in so far as it aids us in giving a proper construction of the statute, for we are not now dealing with the common law. This statute recognizes no distinction between judgments for money or personal property, and decrees or judgments by which the ownership or possession of land is awarded to plaintiff, or his interest therein is preserved. It gives the attorney a lien upon "any judgment" obtained by him, and belonging to his client. The language used is clear and comprehensive; it seems to cover all kinds of judgments, regardless of the subject-matter to which they relate. We do not feel at liberty to say that it was the legislative intent to exclude from the operation of the statute all judgments or decrees involving the ownership or preservation of land. Had such been the legislative purpose, different language would have been used in framing the section. This view of the provision is not only consistent with established rules of statutory construction, but, in our judgment, it also comports with an equitable administration of justice in the premises.

The custom of advocates to render their services *quiddam honorarium* does not exist in this country. We doubt very much if counsel for appellant, who discourse with such evident admiration upon this practice as it existed centuries ago in Rome, in France, and in England, would be willing to see it established in Colorado. The advocate or counselor who should here to day imitate Cicero, and give his services gratuitously, relying solely upon the gift which, in the language of Sir John Davy, "guieth honor as well to the taker as the guier," would soon find the wolf at his door, unless, like Cicero, he had other sources of revenue. It may, from counsel's stand-point, be a humiliating fact, but it is a fact, nevertheless, that in this respect the legal profession occupies the *status* with us of other employment followed for a livelihood. The attorney is considered worthy of his hire, and

is not in danger of disbarment if he contract in advance for his fees, and collect them by suit, when necessary, after the service is rendered.

The attorney's lien, in so far as it relates to judgments, may be accurately defined as a right conferred by statute, or recognized by the common law, to have his compensation or costs, or both, directly secured by the fruits of the judgment. To declare him entitled to a lien upon the judgment, without permitting him, through such lien, to reach and control the subject-matter of the recovery, would be bestowing upon him the shadow, and withholding the substance. He would be no better off than are other general creditors of his client. What equitable consideration supports the conclusion that he should be secured in this way by the fruits of a money judgment, and yet, as to the fruits of a decree or judgment relating to realty, that he should occupy the attitude of a mere general creditor? The fruits of the latter judgment are often far more valuable to his client than are the fruits of the former. Cases involving the title to or the possession of real estate present questions quite as complicated and difficult, and demand of the attorney quite as much learning and labor, as do those relating to damages for torts, or for the violation of simple contracts.

The strongest objection stated in the decisions to recognizing the attorney's lien, where fees are not taxable, in this class of cases, is based upon the proposition that the lien is secret. It is asserted that, as a consequence of this secret lien, the judgment debtor, or the innocent purchaser of the land in controversy, may suffer wrong through the assertion of the lien after a *bona fide* settlement of the judgment, on one hand, or purchase of the land, on the other. It is even declared in one case that "every tract of land which had once been a subject of litigation would lose most of its exchangeable value from an apprehension of some latent lien in favor of some attorney." *Humphrey v. Browning*, 46 Ill. 476. If, under

our statute, a consequence so grave as the foregoing could follow the recognition of the lien, and if there were room in the language used for construction, we would hesitate long before applying the law in this and similar cases. But, however it may be at common law in Illinois or other states where this view concerning the secret lien and its effect is adopted, the objection has with us no particular force; because, while our statute gives the lien upon the judgment, and, as between attorney and client, nothing need be done prior to its enforcement, as to innocent purchasers of the fruits of the judgment we hold that it may be otherwise.

In *Smelting Co. v. Pless*, 9 Colo. 112, we declared that the judgment debtor is entitled to notice of the attorney's intention to enforce his lien, and that if, without such notice, the debtor make a *bona fide* payment or settlement of the judgment, the attorney cannot look to him. The reasons stated in that opinion with reference to the attitude and liability of the judgment debtor, apply with even greater force to an innocent purchaser for value of the land recovered or preserved by a decree or judgment.

We have no statute regulating attorney's fees and making them a part of the judgment. With us this is solely a matter of contract between attorney and client. The judgment debtor and the innocent purchaser are total strangers to this contract. If no fees are due the attorney, no lien exists. The debtor or purchaser does not necessarily know that the fees were not fully paid or secured in advance, and that the attorney is in position to invoke the statute. Neither are they aware that he will enforce the lien, if he has the right to do so. There is nothing compulsory in this particular; he may or may not, as he chooses, subject the fruits of the judgment to the payment of his fees. While the lien upon the judgment undoubtedly exists if there is a balance due the attorney for services, yet the right to enforce it against the subject-matter of the recovery may, in our opinion, be

waived. It is unfortunate that the statute neither specifies a time for the enforcement of the lien nor a method of giving notice of the purpose to do so. But it is unquestionably true that the legislature never intended the lien to be a perpetual incumbrance upon the fruits of the judgment, regardless alike of the attorney's laches in asserting his intention and the rights of innocent purchasers for value.

We think that if the attorney neglects to proceed to the enforcement of his lien until the debtor has in good faith discharged his liability under the judgment, or a third person has in good faith, and for valuable consideration, purchased the fruits thereof, he should be held to have waived the right to look to the debtor, on one hand, or to such fruits, on the other, for his compensation. That is to say, if, without notice that the attorney intends to enforce his lien, the judgment debtor make a *bona fide* settlement of the judgment, or an innocent third person purchase the property, the statutory right is lost. Of course, any collusive settlement or purchase made for the purpose of depriving the attorney of the benefit of his lien would not be in good faith, and would be of no avail against him.

Again, no objection to recognizing the attorney's lien where his fees are not taxable is thus stated in *Forsythe v. Beveridge*, 52 Ill. 268: "There would be cases in which a very unreasonable portion of the fruits would be demanded by the attorney, and collected under the pressure he could bring to bear upon his client." This objection is declared by the learned court to be of "great weight." Its force is in nowise diminished by the fact that a judgment, as in the case at bar, relates to realty, and not to money damages only. Conduct of the kind mentioned would merit and receive the severest judicial censure, and the guilty party would soon find himself in professional disrepute. But it is sufficient for us to say, with reference to this specific objection — *First*, that, as

already declared, fees to be determined as upon a *quantum meruit* are clearly covered by the statute considered; and, *second*, that such determination takes place in court under rules of evidence and principles of procedure calculated to insure justice between parties litigant.·

*Second.* A second question fairly presented by the record and arguments before us is, Can *a suit in equity* be maintained by the attorney for the enforcement of his lien, when the employment is questioned, and the amount of his compensation is unliquidated?

Counsel contend that since a court of equity is not the proper forum to entertain inquiries into questions of contract, nor the proper tribunal to hear evidence and determine the reasonable value of services rendered, these matters ought to have been adjudicated in a court of law. They say that plaintiffs should have brought their action in a legal forum, and there had all controversy concerning the contract, as well as the amount of compensation, first determined; and that then they might perhaps have instituted proceedings in equity for the enforcement of their lien, if any lien they had.

The distinction between *causes of action* at law and in equity doubtless remains. No attempt has been made to abolish it, and any such attempt would be futile. The code merely abolishes forms of action, substituting, for the numerous common-law forms, but one general method of pleading, whether at law or in equity. And unless a court of equity would, before the code, have been properly clothed with jurisdiction over the cause of action stated in the complaint before us, the action cannot be maintained in equity under the code. *Bank v. Ford*, 7 Colo. 314. ·

The attorney's lien, whether under the statute or at common law, is equitable in its nature. Even the decisions in this country, which confine its existence and application to the narrowest limits, always speak of it as an equitable lien, right or privilege. It is not property *in*

the thing, which gives a right of action at law. It is a charge *upon* the thing, which is protected in equity. Courts of law may recognize it when the *res* is in possession of the lienor, and the owner is seeking to deprive him of such possession. But where the thing is not in possession, and some affirmative action is required by the attorney, he, like other lien claimants, must seek relief in equity. In some instances, a formal suit should be instituted; in others, an application to the court rendering the judgment, for the proper order, would be sufficient.

The main purpose of plaintiffs in this case is to utilize their lien by subjecting, through it, the rents and real estate, if need be, recovered by their exertions, to the payment of their claim for services. Since the employment by the different guardians, and the amount of compensation, are controverted matters, it becomes incidentally necessary to investigate and determine these questions. If plaintiffs intruded themselves into the cases without employment, and their voluntary services were objected to and repudiated, or if they have been paid all those services are reasonably worth, the statute gives them no lien. But, since a court of equity is the only forum that can enforce by proper decree the lien rights, we are of opinion that this is one of the cases wherein such court may take and retain jurisdiction for all purposes. Having assumed jurisdiction to enforce the lien, it would be encouraging a multiplicity of suits, and, in this as in other respects, contrary to established procedure in equity, to say that the court of equity shall not determine the incidental, though material, legal questions involved. Appellants waived the right, if any such right they had, to have a jury summoned to try any of the questions of fact presented, by consenting in open court to the trial by a referee of "all the issues of law and of fact." We do not say that plaintiffs could *not* have proceeded otherwise; but we are of the opinion that, under

the circumstances, the suit is "a proper civil action," within the meaning of the statute.

*Third.* It is asserted that, under the contract of employment, plaintiffs are bound to look to the several guardians alone for their compensation; that while, perhaps, the guardians may secure reimbursement from the wards' estate, yet neither the wards nor their estate can by plaintiffs be directly proceeded against and held liable. It is obvious that this objection, if well taken, is decisive against plaintiffs' right of action in the present suit; for if plaintiffs can neither look to the wards nor their estate for the compensation demanded, of course no lien can be decreed, and this equitable action must fail.

Counsel's proposition is based upon the rule that at common law the guardian can, in general, make no contract binding upon the person or estate of the ward. *Simmons v. Almy,* 100 Mass. 239; 1 Pars. Cont. 134–136; Schouler, Dom. Rel. 463; *Stevenson v. Bruce,* 10 Ind. 397; *Tenney v. Evans,* 14 N. H. 343. This rule seems to be sanctioned by a strong preponderance of authority, so far as *common-law actions* are concerned. In such actions, the guardian's contract and liability, except for necessaries under certain circumstances, are in general dealt with by the creditor as purely *personal.* But this is not an action at law, nor is it against the wards or their estate, generally. It is a suit in equity for the enforcement of a statutory lien upon a specific portion of the wards' property. The land and the rents recovered in the original Reithman suit belong to a trust estate; but, by virtue of the statute, they are nevertheless, it is claimed, incumbered with the attorney's lien.

We have already decided that, in general, the attorney's lien upon a judgment recovered by him, and belonging to his client, reaches the fruits of such judgment, though realty be the subject-matter in controversy. We have also held that this lien may be enforced, by a suit in

equity, directly against the property burdened therewith. Are these conclusions regarding the force and effect of the statute erroneous, and is the statute itself inapplicable, where the fruits of the judgment recovered, whether consisting of money or land, become part of a trust estate?

The statutory guardian in Colorado is invested with the general charge and management of the ward's estate, *real* as well as personal. Such control is, of course, subject to the limitations, express and implied, contained in the statute. The guardian is also authorized to prosecute and defend all cases relating to the ward's estate. It is his duty to recover the ward's real property when wrongfully appropriated or withheld, and to demand, sue for and receive all moneys belonging to the ward.

It might have been better had Mrs. Kershow first obtained from the probate court an express command or license to institute, and prosecute to judgment, the original suit against Reithman; but she and the other guardians would have been derelict in the discharge of their official duty had they failed, either with or without such consent, to proceed as they did. Their power and authority in the premises, however, could not now be successfully questioned, nor is there any attempt to challenge them. That suit was instituted for the benefit of the wards. The relation of attorney and client may have existed between plaintiffs and the guardians; yet the suit was prosecuted in the name of the wards, and they were the *real clients*, as well as the real parties in interest. The services of plaintiffs added greatly to the value of the wards' estate, without in the least benefiting the guardians, who neither sought nor derived any personal advantage through the suit. In making and continuing the contract of employment with plaintiffs, the guardians acted solely in their official capacity. There appears to have been no intention, either on the part of plaintiffs to look to the guardians alone for

compensation, or on the part of the guardians to incur
individual liability in connection therewith. This com-
pensation will ultimately become a charge upon the
whole of the estate, should the right to treat it as a di-
rect and superior charge upon a specific part of the estate
be denied. Sustaining the lien avoids circuity of pro-
ceeding, as well as increased expense and annoyance;
therefore the true interest of the wards themselves, like
that of all other persons concerned, will be best sub-
served by recognizing the application of the statute.

While the guardian who employs counsel in behalf of
the estate is ordinarily regarded as the client, a court of
equity, acting under the lien statute, should so far disre-
gard this technical rule as to recognize the clientage of
the real party in interest; and, after careful deliberation,
we have no hesitancy in declaring that such a court, gov-
erned by the considerations above mentioned, and others
that might have been but are not stated, should enforce
the lien in the present as in other cases. It is believed
that this is a question of first impression in Colorado;
and, if the above conclusion can be said to conflict with
the position sometimes taken in relation to the attorney's
charging lien and trust funds, we feel at liberty to recog-
nize the foregoing modification thereof,— sanctioned, as
we think, by reason as well as the statute.

*Fourth.* If the views above stated be correct, it fol-
lows that the three guardians preceding Patterson are
not necessary parties defendant to the present proceed-
ing. Their official character wholly terminated prior to
the rendering of the decree in the first suit against Reith-
man; and, if they were liable at all, their liability is
ignored by plaintiff, so far as this proceeding is concerned.

*Fifth.* The objection of counsel for appellant to the
testimony of plaintiffs themselves must be overruled. If
the present suit can be regarded as in any sense within the
purview of section 3641, General Statutes, relied on by ap-
pellants in support of this objection, the evidence men-

tioned was nevertheless admissible; for the facts to which plaintiffs testified "occurred" subsequent to the decease of the defendants Fillmores' ancestor; and hence this testimony is within the first exception stated in the section named.

*Sixth.* The assertion that there was a misjoinder of parties plaintiff will not be sustained. It has been said that "the court exercises a sound discretion, without adhering to any inflexible rule, in determining whether there has been a misjoinder of parties in equity." 1 Daniell, Ch. note 3, p. 303. The supposed misjoinder in this case is due to the admission of Macon into the firm of Wells & Smith after the employment began; thus in effect creating a new partnership. The object of both plaintiff firms was to secure a lien upon the same funds and the same premises for services rendered to the same parties in the same proceeding. Both firms, and the individuals composing them, were in exactly the same manner interested in the result of the suit, and in the property sought to be subjected to the attorney's lien. Under these circumstances, and in view of the equitable principle above stated, we would hesitate in holding that there was such a misjoinder of parties plaintiff as rendered the complaint, or the proceeding in equity, obnoxious to objection, by demurrer or otherwise.

But it is unnecessary to further discuss or to determine this question of pleading. The alleged misjoinder appears on the face of the complaint. When the demurrer was overruled, appellants filed their answer and went to trial. By so doing they waived their right to be heard in this court upon the present objection. Bliss, Code Pl. § 417; *Tennant v. Pfister*, 45 Cal. 270; *Schoelkopf v. Leonard*, 8 Colo. 159; *Webb v. Smith*, 6 Colo. 365; *Green v. Taney*, 7 Colo. 278.

*Seventh.* As to the alleged conflict between the testimony of Wells, on one side, and Patterson, Irwin and Charles, on the other, it is sufficient to say that, so far as

there is any real and material inconsistency, the testimony of Wells is fortified by that of other witnesses, and also by circumstances in evidence. We would not feel justified in holding that the referee and the court erred in their finding as to the making and continuance of the original contract.

*Eighth.* Finally, it is claimed that the compensation allowed in this case is excessive. The amount is large, but the services extended through a series of years, in different courts. Some of the questions litigated in the original suit seem to have been complicated and difficult. The result of the proceeding was a victory for the wards, and the fruits of the victory were upwards of $20,000 in value. Upon the question as to what would be a reasonable compensation for all the services rendered, ten disinterested witnesses were sworn as experts, all of whom rank among the leading members of the bar of the state. Eight of these experts estimated the value of such services at various sums, not less than $6,000, nor more than $8,000; the two other estimated the same at from $2,500 to $3,000. It is evident that the referee and court found in accordance with the decided weight of expert testimony; and, under all the circumstances disclosed, we are not prepared to say that their finding and judgment are wrong.

We have not overlooked the fact that the attorney's lien statute, as adopted in 1861, re-adopted in 1868, and republished in 1876, contained the adverb or conjunction "when," instead of the relative pronoun "which" (found in the General Statutes), at the beginning of the last clause thereof. But this is a matter of no consequence, for with either of the words the legislative meaning is clearly the same. That body intended, in the part of the section referred to, to say that the lien conferred therein should be enforced by the proper civil action.

Perceiving no fatal error in the record before us, the decree of the district court will be affirmed.

                                        *Affirmed.*