No. 9739.

*Clark et al. v. O'Donnell et al.*

1. ATTORNEY'S LIEN—*Properties Received by the Attorney in Trust.* Plaintiffs, a firm of attorneys, contracted with the defendant, Clark, to prosecute his claim for 700,000 shares in the capital of a certain corporation and prevailed in the action. One of the attorneys afterwards received the certificates representing the shares, "on behalf of" the client, and transmitted them to a trust company in an eastern city, which held them by agreement as trustee for the client, as to a portion of the shares, and as to the residue as trustees for others who had advanced money to consummate the purchase. The attorneys claimed a lien only upon the share of the client. *Held* there was no room for the application of the rule which denies the attorney a lien upon properties held for a special purpose, adverse to the lien.

2. ——*Notice of the Lien.* An agreement by the client with others who provided the money required to complete the purchase of

the shares, that the certificate should be deposited with a certain trust company, for the benefit of the client and these contributors, and the actual transfer of the certificates to the trust company, with notice of the lien upon the interest of the client, was held not to defeat or impair the lien.

The notice required by the statute is not a prerequisite to the validity of the lien.

3. ——Properties Held by Another, as trustee for the client, but which are the result of the attorney's services, are subject to the lien.

4. CORPORATE STOCK—Situs of, is the state where the corporation was created.

Error to Denver District Court, Hon. Clarence J. Morley, Judge.

Mr. HALSTED L. RITTER, Mr. HAMLET J. BARRY, for plaintiffs in error.

Mr. HORACE N. HAWKINS, Mr. GEORGE W. MUSSER, for defendants in error.

Mr. Justice Allen delivered the opinion of the court.

THE defendants in error, plaintiffs below, T. J. O'Donnell and others, are a firm of attorneys-at-law, and instituted this action against the plaintiffs in error, N. F. Clark and others, to foreclose an attorney's lien on the interest of Clark in 700,000 shares of the capital stock of the plaintiff in error, The Mexico-Wyoming Petroleum Company.

Clark was the only defendant who filed an answer in the court below. The answer admits the following allegations of the complaint, which are quoted for the purpose of showing some of the facts leading up to the institution of this case. "4. That on or about the 24th day of July, A. D. 1915, the defendant Clark retained and employed the plaintiffs in and about the matter of enforcing a certain contract before that time entered into by him, the said Clark, with the defendant, The Mexico-Wyoming Petroleum Company, under and by the terms of which he, the said Clark, in consideration of * *' * (etc.) had acquired the right

and option to purchase seven hundred thousand (700,000) shares of the capital stock of the said company, being what is commonly called treasury stock thereof, at and for the price. of one hundred thousand dollars ($100,000). 5. That under and by virtue of the said retainer and employment, the plaintiffs thereafter rendered and performed for the defendant Clark divers services as attorneys and counsellors at law in the states of Colorado, Wyoming, Pennsylvania, Illinois, New York, Massachusetts and Michigan, which services continued from the date of the said employment until, to-wit, December 2, 1916, and resulted in the enforcement of the said contract through a decree and final judgment duly entered prior to the date last aforesaid in the District Court of the State of Wyoming, in and for Hot Springs County, * * * in a certain cause in which the said N. F. Clark was plaintiff and the said The Mexico-Wyoming Petroleum Company and others were defendants, which cause was brought and prosecuted to final judgment by these plaintiffs as attorneys for said Clark, under their said employment by him, and under and by the terms of which said decree the said defendant, The Mexico-Wyoming Petroleum Company, was required to issue and deposit in the registry of said court a certificate for seven hundred thousand (700,000) shares of the capital stock of said last named company, to be delivered to the said Clark if he should pay into the registry of said court the sum of ninety-two thousand dollars ($92,000), which was the balance of the sum which the said Clark was required under the terms of said contract to pay to the defendant, The Mexico-Wyoming Petroleum Company for the said seven hundred thousand (700,000) shares of stock. 6. That thereafter. the defendant, The Mexico-Wyoming Petroleum Company did, in compliance with the terms of said final decree, issue a certificate for seven hundred thousand (700,000) shares of its capital stock in the name of the defendant Clark. and did deposit the same in the registry of the said court within the time fixed by the said decree for such deposit to be made by it; and thereafter the said Clark did pay into the reg-

istry of the said court the said sum of ninety-two thousand dollars ($92,000), and such payment into such registry was made within the time fixed by the said decree for the making of the same. 7. That afterwards these plaintiffs, as the attorneys of the said Clark, obtained, on behalf of the said Clark, leave and permission of the said Hot Springs District Court to withdraw the said certificate from the registry of said court; and the said certificate came into and was in the possession of these plaintiffs, as attorneys for the said Clark, at Denver, Colorado, on the date next hereinafter mentioned (December 2, 1916). 9. That the defendant Clark had, before the date next hereinafter mentioned (December 2, 1916), interested divers other persons in the purchase of the said seven hundred thousand (700,000) shares of stock under the said contract, and it had been agreed between the said Clark and the said divers other persons and the said defendant, The Union Trust Company of Pittsburg that when the said Clark became entitled to have the said certificate representing said seven hundred thousand (700,000) shares delivered to him by these plaintiffs he would authorize, empower and instruct these plaintiffs to deliver the same to The Union Trust Company of Pittsburg, so that the said The Union Trust Company of Pittsburg might be made the holder of the said seven hundred thousand (700,000) shares for the use and benefit of and as trustee for the said Clark, and said divers other persons, in the proportions and parts which had been agreed upon between the said Clark and the said divers other persons."

The attorney's lien, which the plaintiffs claim and seek to foreclose in this action, is not one upon the whole of the 700,000 shares of stock awarded to the defendant Clark by the decree of the District Court of Wyoming, but only upon the interest of Clark in such shares which he, Clark, had and retained after he made the agreement mentioned in paragraph 9 of the complaint, above quoted.

The agreement was made for the purpose of securing the $92,000 which was necessary to be paid into court before the 700,000 shares of stock could be recovered. The

necessity for the payment of the $92,000, clearly appears from paragraph 5 of the complaint, above quoted, and admitted in the answer. As to the facts, material in this connection, the plaintiffs in error, in their brief, say: "The defendant Clark, not having himself personally sufficient money to pay the aforesaid amount, enlisted the co-operation of a number of other men who were more or less interested with him in the acquiring of said shares of stock, and among them the said sum of money was raised. For the purpose of raising this money, these men met in Pittsburg, Pennsylvania, * * * and discussed ways and means for providing the aforesaid sum to obtain the said certificate of stock. * * *" These parties entered into the agreement above mentioned. The result of the agreement was that Clark would have a twenty (20) per cent interest in the whole 700,000 shares, free and clear of cost or expense, other than attorneys' fees. This fact is not controverted. It is only this interest of Clark that is sought to be subjected to the attorney's lien.

It is admitted in the pleadings that on December 2, 1916, the plaintiffs were "in possession, for and on behalf of defendant (Clark), of a certificate for seven hundred thousand (700,000) shares of stock in The Mexico-Wyoming Petroleum Company, defendant, and * * * that the plaintiffs did transmit said certificate to the defendant, The Union Trust Company of Pittsburgh." This quotation is taken from the defendant Clark's answer.

The first controverted allegations of the complaint are those wherein the plaintiffs allege that they had a lien upon the whole of the 700,000 shares of stock at the time when they took the certificate therefor into their possession, receiving the same from the District Court of Wyoming. The complaint further alleges certain facts for the purpose of showing that the plaintiffs retained a lien upon the interest of the defendant Clark in the 700,000 shares of stock, at and after the time that the certificate was transmitted by them, the plaintiffs, to the defendant, The Union Trust Company. These allegations are denied generally. Other

matters in the pleadings are concerned with the amount of compensation which is due plaintiffs.

The trial court found all the issues in favor of the plaintiffs, "and that the equities of this cause are with the plaintiffs and not with the defendants, or any of them." The court decreed "that the plaintiffs do have and recover of and from the defendant, N. F. Clark, the sum of $14,944.59 * * * and that the plaintiffs have and are entitled to a lien upon all and every right, title and interest in part and portion of the defendant Clark in 700,000 shares of the capital stock of the defendant, The Mexico-Wyoming Petroleum Company." It was further ordered that in default of the payment by Clark of the sum of $14,944.59, that his rights and interests in the stock in question be sold. The defendants have sued out a writ of error, and the cause is before us upon their application for a supersedeas.

The first contention of the plaintiffs in error, defendants below, is that the plaintiffs had no lien upon the 700,000 shares of stock when the certificate for the same was first taken into their possession, or at any time. In this connection they say: "Plaintiff T. J. O'Donnell received said stock clothed with an express trust and he was acting for the Union Trust Company, trustee, when he got it." The plaintiffs in error endeavor to show that this case falls within the rule, mentioned in some authorities cited by them, which is stated in 6 C. J. 786, as follows: "An attorney has no lien on property placed in his hands for a special purpose under such circumstances that a trust arises which is inconsistent with, or adverse to, the claim of a lien." Under the facts disclosed by the record, there is no room for the application of the foregoing rule. The only answer that was filed in the case admits, specifically, that the plaintiffs came into possession of the stock "for and on behalf of the defendant Clark," and admits those allegations of the complaint to the effect that the certificates for such stock was in the possession of the plaintiffs "as attorneys for the said Clark." The evidence shows that the plaintiffs were acting as the attorneys for Clark when receiving the

certificate from the registry of the District Court of Wyoming, and not as messengers or agents of the Union Trust Company or any person other than Clark. The plaintiffs in error claim that the plaintiff O'Donnell received the certificate "solely under the terms" of the agreement between Clark and others, hereinbefore mentioned, and received it "for transmission and lodgment with said Trust Company." Assuming, without conceding, that the certificate was thus received by the plaintiffs, nothing was ever done or claimed by them which is inconsistent with what the defendants say was the "express trust" with which the plaintiffs received the certificate. The certificate that was issued and lodged in the registry of the District Court of Wyoming was issued and stood in the name of H. F. Clark. The agreement which Clark thereafter made with the persons who raised the necessary money with which to obtain the certificate, provided that the stock should "be transferred and assigned to and held in the name of" The Union Trust Company "as trustee for the benefit of the party of the first part (Clark)," and the parties who furnished the money, referred to in the agreement as "the parties of the second part." The plaintiffs never attempted, and do not now attempt, to assert any lien on the 700,000 shares of stock as a whole, or upon the interest of any of the parties to the above mentioned agreement other than the defendant Clark. Nothing was ever done by the plaintiffs to interfere with Clark's contract with his associates. On the other hand, the plaintiffs promptly forwarded the certificate to the Union Trust Company so that steps might be taken whereby the shares would be placed in the name of The Union Trust Company of Pittsburg, to be held by it as trustee for Clark and others, as provided in the agreement. The fair dealing of the plaintiffs, Clark's attorneys, in this respect, appears to have paved the way for a further contention, made in an effort to defeat the lien.

The further contention of the plaintiffs in error is that the "plaintiffs waived the lien", and the principal fact relied upon to support such a conclusion is stated in the brief

of the plaintiffs in error as follows: "Mr. O'Donnell sent the 700,000 shares of stock to The Union Trust Company, permitted the stock to go out of his hands, both by the settlement in the Trust Agreement and the surrendering of the same (the certificate of stock) to the Union Trust Company." It cannot be disputed that the 700,000 shares of stock in question were the fruits of the judgment which had been obtained through the services of the plaintiffs, and could be made subject to an attorney's lien. *Fillmore v. Wells,* 10 Colo. 228, 15 Pac. 343, 3 Am. St. Rep. 567. It is assumed in the briefs, and we will assume likewise, that the attorney's lien statute is the same in Wyoming as in Colorado. Under that statute an attorney may file a notice of his claim with the clerk of the court where the judgment is recovered, and such notice "shall be notice to all persons claiming by, through or under any person having obtained a judgment." Sec. 242, R. S. 1908. Such statutory notice is not made a prerequisite to the validity of the lien, but merely provides a way in which notice may be given, so that the lien may be preserved in the case, among others, that the fruits of the judgment come into the hands of some third party, but if such third party has actual notice, the statutory notice, as to such third party, is not necessary. A person having actual notice is in a better position to protect himself than if he merely had the constructive notice resulting from the filing of the statutory notice. The principal purpose of the statute, as to notice, is to protect innocent purchasers of the fruits of the judgment.

In the instant case The Union Trust Company had full and actual notice of the plaintiffs' attorney's lien at the time it received the certificate of stock for the 700,000 shares. The plaintiffs' letter to the Trust Company, which letter accompanied the certificate, recited the services which had been performed by the plaintiffs for Clark in procuring the shares, and continues: "For said services I and the said firm acquired a lien upon the fruits of the said judgment, and I desire to retain, hold and keep the said lien,

so far as the interests retained by the said Clark in the fruits of the said judgment is concerned, and against the same. *   *   *

"You are therefore hereby notified that in relinquishing possession of the said certificate for 700,000 shares, I do so upon the express understanding that you will take notice of the claim of lien for legal services above herein referred to, and so far as the interests and rights of the said Clark under the said agreement of October 31, 1916, are concerned, will not permit the same or any part thereof, or any dividends or interests in moneys arising therefrom, to be dealt with or pass from your hands, until the said lien and claim shall be discharged, and you notified thereof accordingly."

The evidence shows not only a notice to the Trust Company, as above seen, but also a notice to Clark and his associates that the plaintiffs claim their lien.

As before stated, the plaintiffs do not now assert a lien against the entire 700,000 shares of stock, but only against the defendant Clark's interests therein. In view of the facts hereinbefore stated, and particularly since the Trust Company received the shares, including Clark's interest therein, with notice of the plaintiffs' lien upon Clark's interest, there is no reason why the lien upon such interest cannot be enforced in this action, even though such interest is being held by the Trust Company, as trustee for Clark.

The Union Trust Company was one of the defendants below, appearing and filing a demurrer, which was overruled. It filed no answer. It is named as one of the plaintiffs in error here, but does not appear to have any cause for complaint against the decree below. Clark is the only real party in interest, among the plaintiffs in error. The decree does not, and cannot, injuriously affect any party other than Clark, since it is only the interest of Clark that is sought to be subjected to the lien. Clark is not in a position to complain that the plaintiffs did not establish their lien by the filing of some formal notice with the clerk of the court where the original action was pending, since

"as between attorney and client nothing need be done prior to its enforcement." *Fillmore v. Wells, supra.*

The trial court committed no error in holding and decreeing that plaintiffs had an attorney's lien upon Clark's interest in the stock in question.

A large part of the briefs filed on either side, is devoted to a discussion of the evidence as to whether or not, as alleged in the answer, it had been agreed between the defendant Clark and the plaintiffs that the latter "should receive the sum of $10,000 in full payment and satisfaction" for the services rendered. In the matter of the amount of compensation, the action is brought upon a *quantum meruit,* the complaint alleging that the reasonable value of the services was $25,000. There is no dispute as to such value, and it appears to be conceded that the services were worth that amount. The controversy relates to the alleged agreement. The issue was found for the plaintiffs. There is sufficient evidence to support the finding.

The plaintiffs in error further contend, without the citation of any authority, that there was no *res* within the state of Colorado, and that therefore the defendant Clark, who is a non-resident, could not be served with summons by publication. Aside from the fact that Clark appeared and filed an answer, which gave the court jurisdiction over his person, the subject matter of the suit was within the state. The shares of stock involved in this action are shares in a corporation created in this state. This is admitted in the pleadings. Shares of stock in a corporation are personal property, whose location is in the state where the corporation is created. 2 Cook on Corporations (6th ed.), section 485.

The application for a supersedeas is denied, and the judgment is affirmed.

*Affirmed.*

Chief Justice Garrigues and Mr. Justice Bailey concur.