[No. 5418.]
[No. 3076 C. A.]

## DODGE ET AL. v. CHAMBERS ET AL.

**1. Pleading—Sworn Complaint—Effect of Averments.**

Admissions and averments made and sworn to in a complaint are binding upon plaintiff through all the subsequent stages of the case; and, where an original verified complaint and amendment thereto alleged that, during certain months, defendant was a corporation, plaintiff may not subsequently deny the corporate capacity of defendant, and show that it was a partnership; and hence a finding by the trial court that defendants were partners was improper.—P. 374.

**2. Mines and Mining—Mining Partnerships—Creation—Corporations—Advancements by Stockholders.**

Where defendants were members and stockholders of a mining corporation, and, after the mine had been operated some time and continued unproductive and the treasury stock had been sold and its funds exhausted, defendants, without any formal action by the company, but by tacit agreement among themselves, put up each month their pro rata share of the monthly expenses incurred in the operation of the property, with the understanding between themselves and with the company that the sums so advanced should be repaid out of the first earnings from the mine, they did not thereby become copartners in prosecuting the work, as such contributions were merely voluntary loans or advancements to the corporation, and were expended for services rendered and supplies furnished to the corporation. —P. 375.

**3. Pleading—Amended Complaint—New Cause of Action.**

Where an action was originally instituted against a corporation to recover a debt due from it in its corporate capacity, an amended complaint charging defendants as individuals or copartners constitutes a new cause of action, and cannot be allowed by way of amendment.—P. 375.

**4. Practice in Civil Actions — Pleading—Variance—Allegations and Proof—Corporations.**

Proof must be within and support the allegations of the pleadings and, hence, where the complaint stated a cause of action against a corporation for a corporate debt, in order to establish the liability of the stockholders, it may not be shown that they agreed to pay such indebtedness sued for.—P. 377.

*Appeal from the District Court of Pitkin County.*
*Hon. John T. Shumate, Judge.*

Action by George Chambers, The Lewis H. Tompkins Hardware Company, Edward Sweeney and William Cassady against George B. Dodge and Walter Boyle. From a judgment for plaintiffs, defendants appeal.     *Reversed and remanded, with directions to dismiss.*

Messrs. VAILE, MCALLISTER & VAILE and Mr. ERNEST KNAEBEL, for appellants.

No appearance for appellees.

The Lenado Leasing Company was incorporated March 9, 1900, with a capital stock of ten thousand shares, of the par value of one dollar per share; five shares were subscribed and paid for in cash. On March 10, 1900, it purchased from H. B. Gillespie a certain lease on the Leadville lode mining claim, situate in Woody Creek mining district, Pitkin county, Colorado, belonging to The Woody Creek Consolidated Mining Company or The Woody Creek Mining Company, and issued in payment therefor the residue of its capital stock. Mr. Gillespie placed in the

treasury of the company two thousand nine hundred shares of the capital stock, as a fund to be used in developing and operating the leased property, and shortly thereafter sold the balance of his stock, being something over five thousand shares, to M. C. McNichols, who was elected president of the company. P. W. Swan, who was a stockholder, was placed in charge of the property as superintendent and assistant manager. Mining operations were commenced and carried on under the supervision of Swan. Soon after work began, a rich body of ore was found, and for some time the expenses of operating the lease were paid out of the proceeds of the sales of ore. The ore body was soon exhausted, and the company was compelled to resort to a sale of the treasury stock to pay the expenses of operation. Some time during the summer of 1900 McNichols sold to George B. Dodge and Walter Boyle each a considerable block of his stock. Dodge and Boyle also purchased at par, most, if not all, of the treasury stock. By October 1, 1900, the treasury stock was exhausted, and at that time the stock of the company was held as follows: A. J. Rising, 1,000 shares; H. L. McNair, 1,000 shares; P. W. Swan, 1,000 shares; M. C. McNichols, 2,000 shares; G. B. Dodge, 2,500 shares; and Walter Boyle, 2,500 shares. The mine continued unproductive, and the treasury stock having been sold, it became necessary to suspend operations, or make an assessment on the stockholders. Without any formal action of the company, but by tacit agreement among themselves, McNichols, Swan, Dodge and Boyle put up from time to time their *pro rata* share of the monthly expenses incurred in the operation of the property. Rising and McNair, having received their stock for legal services with the understanding that there should be no assessments upon it, did not contribute to these expenses. The con-

tributing stockholders advanced the money for these expenses to the company, with the understanding between themselves and with the company that the sum so advanced should be repaid out of the first proceeds from the mine and before Rising and McNair should receive any dividends therefrom. The October and November expenses were paid in this manner, when McNichols and Swan became discouraged and declined to make any further contributions. Mining operations were, however, continued, and Dodge and Boyle made their *pro rata* contributions for the December bills. Early in January, 1901, the company suspended work, and in February, 1901, subleased the property to Charles Dustin. At the time the company suspended operations it was indebted to some of the miners for work upon the property, and also to the appellees for supplies furnished to carry on the mining operations. The miners assigned their claims against the company to the appellees, and the latter instituted three separate suits, naming as defendants therein The Lenado Leasing Company, The Woody Creek Consolidated Mining Company, and The Woody Creek Mining Company, praying judgment against the former for the various sums of money owing them directly or by assignment, and a decree against The Woody Creek Mining Company fixing a mechanic's lien upon the property.

In their several complaints they alleged that "during the months of December, 1900, and January, 1901, the defendant, The Lenado Leasing Company, was a corporation and was, at the special instance and request of The Woody Creek Mining Company, engaged in the working, preservation, prospecting and development of said lode mining claim in search of metals and minerals," etc. By an order entered January 13, 1902, the three suits were consolidated.

On June 10, 1902, the plaintiffs in the consolidated cases applied for and obtained the following order:

"George Chambers *et al.*
  "v.
"The Woody Creek Consolidated ⎫
  "Mining Company *et al.* ⎬ 1987.
                               ⎭

"At this day come again the parties hereto by their attorneys respectively.

"Thereupon come the plaintiffs and on their motion this cause is dismissed as to defendants, The Woody Creek Mining Company and The Woody Creek Consolidated Mining Company.

"It is further ordered by consent of the parties hereto that the plaintiffs have time until twenty days from the date hereof within which to prepare and file their third amended complaint and make certain parties alleged as forming The Lenado Leasing Company, to wit, George B. Dodge, Walter Boyle, H. L. McNair and A. J. Rising, defendants herein."

In the third amended complaint, which was filed on the date last mentioned, the plaintiffs, *inter alia,* allege:

"1. That during the months of December, A. D. 1900, and January, A. D. 1901, the defendant, The Lenado Leasing Company, was engaged in the working, preservation, prospecting and development of the Leadville lode mining claim, * * * in search of metals and minerals, as lessees thereof.

"2. That the defendants, The Lenado Leasing Company, was at said time a common name, that George B. Dodge, Walter Boyle, Herbert L. McNair and Amos J. Rising were at said time associated in the business of mining, under the name of The Lenado Leasing Company."

Here follow statements and notice of lien claimed upon said mining claim. It avers the per-

formance of labor in the month of December, 1900, upon the property, at the instance and request of the defendant. Then follows a statement of the amounts claimed by the plaintiff and his assignors. Among the latter appears the name of P. W. Swan as entitled to sixty dollars. Then follow allegations necessary to support the claim for mechanic's lien, prayer for judgment against The Lenado Leasing Company, Dodge, Boyle, McNair and Rising, for $724.27 and costs, and for decree awarding the plaintiff a lien upon the Leadville lode mining claim, its improvements and machinery, for that amount.

An alias summons was issued August 7, 1902, against the new defendants, and returned August 11, 1902, showing service upon Dodge and Boyle. After appearing specially and filing a motion to quash said alias summons as to themselves, Dodge and Boyle filed an answer to the third amended complaint, which contained a general denial of the allegations of the complaint, and, as a second defense, that "The Lenado Leasing Company is, and was, at all the times mentioned in the plaintiff's third amended complaint, a corporation    *    *    *" and "at all the times in said third amended complaint mentioned was in the possession of and engaged in the working, preservation, prospecting and development of the Leadville Lode Mining Claim    *    *    *   as lessee thereof; that these defendants were not, nor was either of them, so engaged, or so, or otherwise, in possession of said claim at the times mentioned in said third amended complaint or at any time; that the plaintiff and his assignors did not, nor did any of them    *    *    *   perform any work    *    *    *   at the special instance or request, or by or under the authority of these defendants, or either of them, and that, if any work and labor was    *    *    *   performed by the plaintiff and his assignors,    *    *    *   then

said work and labor was performed by the plaintiff and his assignors * * * at the special instance and request of the said The Lenado Leasing Company, and not otherwise; and that the alleged claims and liens of this plaintiff and his assignors, if they, or any, or either of them, be good and valid, and to whatsoever extent they, or any, or either of them, may be good and valid, are claims or liens upon debts or obligations contracted by the said The Lenado Leasing Company, and have no reference to, or connection with, and are not founded upon any obligations, debts or contracts of these defendants, or either of them.''

On October 18, 1902, the plaintiffs filed a replication, making a statutory denial of the allegation that The Lenado Leasing Company was a corporation, or that it was ever in possession of said mining claim or bore or paid any of the expenses of working or mining said claim, and also alleged that said Dodge, Boyle, McNair and Rising ''were, at all the times mentioned in the said third amended complaint, in possession of said mining claim and working the same as a mining partnership. That they were associated together as mining partners under the name of The Lenado Leasing Company.'' That defendants, at all of said times, contributed money according to their respective interests in The Lenado Leasing Company, for the payment of the expenses of said mining partnership, and that defendants, as mining partners, simply used the name of The Lenado Leasing Company as a cloak, in the hope of escaping personal liability in the event said mining operations proved unsuccessful.

On January 19, 1903, a trial to a jury was had. The jury failed to agree, and were discharged. On January 15, 1904, the case came on for trial to the court, a jury being expressly waived, and the court

found substantially as follows: That The Lenado Leasing Company, as a corporation, had possession of said claim and prosecuted work thereon until October, 1901, when it ceased operations as a corporation; that defendants, Dodge, Boyle, McNair and Rising, together with McNichols and Swan, prosecuted work upon said claim by voluntary assessments upon themselves until November, 1900; that McNichols and Swan then quit such work and paying said assessments, and thereafter, by agreement and understanding among themselves, the defendants, Dodge, Boyle, McNair and Rising prosecuted work upon said lode mining claim during the month of December, 1900, and into January, 1901; that thereby the defendants, Dodge, Boyle, McNair and Rising became and were copartners, and that a mining copartnership existed between them, and the work was prosecuted and the debts sued for became due under said copartnership agreement and work; that plaintiff agreed to and with defendants McNair and Rising not to prosecute this action against them or take any judgment against them, thereby releasing said McNair and Rising from any responsibility for the indebtedness sued upon; and thereupon ordered and entered judgment against Dodge and Boyle for one-half of the amount claimed by the plaintiff, and costs.

From this judgment, Dodge and Boyle prosecute this appeal.

Mr. JUSTICE GODDARD delivered the opinion of the court:

Numerous errors are assigned, but we deem it necessary to notice only those which challenge the action of the court below in finding and adjudging that there was any individual or personal contract between these appellants or between Dodge, Boyle,

McNair and Rising and the appellees, or their assign-
ors, for the carrying on of said mining operations;
and in finding and adjudging that there was any
partnership between the appellants as between them-
selves or any other persons for the carrying on of
the mining operations upon the property, and in find-
ing that in December, 1900, and January, 1901, or at
any time, The Lenado Leasing Company was a part-
nership.

The finding that The Lenado Leasing Company
ceased operations as a copartnership is in direct con-
tradiction to the allegations in the original verified
complaints, as well as the averments in the amended
complaints prior to the third.   Therein the plain-
tiffs alleged and swore "that, during the months of
December, 1900, and January, 1901, the defendant,
The Lenado Leasing Company, was a corporation,
and was   *   *   *   engaged in the working, preserva-
tion, prospecting and development of said lode min-
ing claim, in search of metals and minerals."

We think it is well settled that admissions and
averments made and sworn to in a complaint are
binding upon the plaintiff through all the subsequent
stages of the case.

In *Crater v. McCormick*, 4 Colo. 196, 200, this
court said:

"It is a rule that 'whatever has been admitted
on both sides in the pleadings cannot be contradicted
either in the subsequent pleadings or even by the ver-
dict.   For neither party can retract what he has be-
fore conceded on the record; and the jury have no
authority to find any other facts than such as are put
in issue.'—Gould's Pleadings, § 168.   Says Stephens
on Pleadings, p. 217: 'The effect of such admis-
sion is extremely strong, for, first, it concludes the
party, even though the jury should improperly go
out of the issue and find the contrary of what is there

confessed on the record; and, in the next place, it is to be remarked that the confession operates not only to prevent the fact from being afterward brought into question in the same suit, but is equally conclusive as to the truth of that fact in any subsequent action between the same parties.' "

Furthermore, this finding of the court is without support and in direct contradiction of the undisputed evidence produced upon the trial of the cause.

Neither was there any evidence to support the further finding that the defendants, Dodge, Boyle, McNair and Rising, became and were copartners in prosecuting the work for which a recovery is sought. The work was at all times carried on by the corporation as such, and the contributions by the defendants were voluntary loans or advancements to the company by them as stockholders, and were expended and disbursed by the manager and superintendent of the company for services rendered and supplies furnished to the corporation as such.

There was no testimony tending to support the averments of the amended complaint which, in themselves, stated a new and different cause of action than that set forth and relied on in the original complaints. The suits were originally instituted against corporations, alleging a debt by one of them in its corporate capacity in mining operations and work conducted by it as a corporation; and it is apparent that the purpose and object of the actions as originally instituted were to collect a corporate debt against one corporation and impose a lien upon the property of the other. An attempt to change a cause of action against the corporation to one against these defendants as individuals cannot be permitted under the guise of an amendment.

As was said in *Davis v. Johnson*, 4 Colo. App. 545, 548:

"It is not permitted to a plaintiff, under the guise of an amendment, to substitute for the original cause of action a new and different one."

And in *Thompson v. White,* 25 Colo. 226, 240, this court said: -

"A plaintiff may not, by a replication, any more than by amendment to a complaint, change the cause of action as stated in the original complaint from a legal one to an equitable one, or *vice versa.*"

The trial court, during the progress of the trial, recognized that the cause of action stated in the original complaints could not be reconciled to that attempted to be set out in the amended complaint by what it said in support of its ruling, excluding as evidence the allegations in the original complaint. It used this language:

"That third amended complaint stands by itself without reference to any other complaint, or amended complaint in the action, as if they had not been drawn, because that has been filed by leave of court; and whatever facts are set up in that third amended complaint are the only facts in the case now; the facts that are stated in the amended complaint or original complaint itself can cut no figure with this third amended complaint, and are entirely eliminated."

This was a recognition by the court that a new suit, entirely different from the original suit, might be instituted and prosecuted under the guise of an amendment.

It was sought to be shown that the defendants Dodge and Boyle had, by a conversation held with the manager Swan, made themselves liable for the payment of the indebtedness sued for.. If we accept Mr. Swan's version of that conversation, it would not support this claim, and furthermore, such a liability could not be established under the aver-

ments even of the third amended complaint, upon which the trial was had. The alleged conversation as to both and each of these appellants was outside of the allegations made and the issues joined by the pleadings. To allow the recovery permitted in this case upon evidence showing a separate distinct and individual understanding and contract on the part of Dodge and Boyle would be in violation of the invariable rule that the proof must be within and support the allegations of the pleadings.

The evidence relied on to support this judgment was not only inadmissible, but insufficient to support it.

It is unnecessary to discuss the further errors assigned, since the judgment must be reversed for the foregoing reasons.

The judgment is accordingly reversed, and the cause remanded with directions to dismiss the action as against these appellants.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.