### [No. 1854.]

### Roberts v. Greig et al.

1. Bills and Notes—Evidence—Contemporaneous Parol Agreement.

In an action on a promissory note by an indorsee after maturity, a parol contemporaneous agreement that the note was to be paid out of the proceeds of a mining venture and if there were no earnings the note was to be returned and canceled was admissible in evidence in defense.

2. Same—Partial Payments—Admissions.

In an action on a promissory note by an indorsee after maturity, where the payers introduced in defense evidence of a contemporaneous parol agreement tending to show that the note was payable out of the proceeds of a mining venture and its payment conditioned on the earnings thereof, and plaintiff's evidence showed several partial payments on the note, it was reversible error to refuse to permit plaintiff to show what the defendants said when the partial payments were made where such admissions tended to contradict defendant's defense, and this rule is applicable to a trial by the court as well as one by a jury.

*Appeal from the District Court of Arapahoe County.*

Messrs. Patterson, Richardson & Hawkins, for appellant.

Mr. H. A. Lindsley and Mr. H. E. May, for appellees.

Bissell, P. J.

This action is based on a promissory note. It is a promise to pay one year after date to the order of E. E. Hill, $588

at the First National Bank, with interest at eight per cent for value received.   The paper was signed by Lomax, Greig and Harris.   Hill indorsed it in blank and delivered it to Roberts after maturity for a valuable consideration.   Thereafter and on different dates covering a period of two years or more the parties paid about $220 on the principal and interest.   Failing to pay the balance this suit was brought.   When it came to trial the defendants, or at least two of them, gave evidence substantially that when the note was executed the parties had come together to discuss the proposition of Hill's retirement from the enterprise in which the parties had embarked. It appeared that they had located or purchased some mining claims down in New Mexico which were supposed to be of value and had put up a mill to treat the ore which was expected to be taken out of the property.   Much money had been expended and the concern was in debt some $1,300 or $1,400.   Hill's family seems to have been sick and he wanted to get out of the scheme and relieve himself from any liability for the accrued debts.   He had a chance to sell but the parties refused to let the vendee come in.   Under the original agreement this right of admission or exclusion was reserved.   This rendered Hill somewhat anxious to get out and the parties came together to see if a satisfactory arrangement could be made.   The result of it was an agreement whereby Hill was to retire, be released from any obligation to pay the debts and receive this note.   Now comes in the nub of the dispute. Two of the parties testified that they expressed their willingness to sign a joint note, but on condition that the note should be paid from the proceeds of the mill, and if there were no earnings the note was to be returned and destroyed.   This evidence as to the destruction of the note was only testified to by one of them, the other simply saying that the parties were to sign a note to be paid out of the proceeds of the mill. All this evidence was objected to and on this objection the principal question in the case may be said to arise.   During the progress of the trial the plaintiff showed the various payments which had been made and then attempted to prove by

the attorney what was said by the parties when they made them.   This testimony was objected to and excluded.

These two questions are the only ones which are of sufficient importance to justify a reversal of the case, and all others suggested by the record are inconsequential.

No more conservative rule of evidence has ever been established than that which inhibits the introduction of parol evidence of a contemporaneous agreement to modify the terms and conditions of one in writing.   I believe it is as wise a rule as the doctrine which was incorporated into and became what is known as the statute of frauds.   I am decidedly of the opinion that it would be a much wiser and safer doctrine to permit no evidence to be offered contradicting the terms of a written instrument unless that evidence is in writing.   It tends to the conservation of the integrity of written contracts, the preservation of property rights and interests and the prevention of untold and almost illimitable prevarication.   The attempt to enforce a liability which the parties believe to be unjust because of parol understandings affords a terrible temptation to a defendant to attempt as he conceives to compel the doing of that which is right and was agreed to by stating as the agreement what may avoid the express terms of the promise.   To bring about this result they put their understandings into the form of express promises, specific agreements, antecedent conditions, or conditions subsequent, and are often led to enlarge, broaden and make specific matters which before were limited and uncertain.   The temptation is almost too great for frail humanity, and therefore I believe personally that there ought never to have been an exception engrafted on that rule.   Notwithstanding this fact the rule is otherwise and this court in the *Barets* case, speaking by me, recognized an exception to the doctrine.   In that case this court went no further than to hold that wherever parties were able to prove that a piece of commercial paper had been executed and had passed into the possession of a party, but under circumstances which would not make the transmission a delivery under the law merchant, the party might show the cir-

cumstances and conditions of the delivery and prove the existence of the condition precedent, which not having been accomplished left the delivery incomplete. This was practically the *Dulaney* case in the supreme court of the United States. The doctrine seems to have been somewhat extended as nearly as I can gather in a recent case in the supreme court of this state, to wit, the *Dusenbery* case, and yet on principle it is apparently identical with the *Dulaney* case. In other words, it is quite impossible for me logically to conceive of a difference between the two cases or between those two cases and the present. In all three of them according to the testimony the note was not to take effect as a note until the happening of an event in the future. In the *Dulaney* case the event which was the condition precedent was the opportunity to open up and develop the property and determine its value. If found satisfactory then the note was to be the consideration price. In the *Dusenbery* case there was a direct agreement to pay so much for the running of a tunnel, yet the party proved that this whole agreement was a part of a scheme to place the mines in London for a named consideration and only in the event of a successful promotion were the parties to pay the owners of the property the expenses of running the tunnel. In the present case the parties were copartners and they took the property and assumed the debts, and as an added consideration were to pay Hill $588, providing the running of the mill produced that result either gross or net. In other words, the completed delivery of the note was only to happen in the event the mill ran and money was gotten out of the operation. I am very frank to say that it is almost impossible for me to conceive a case which would not admit the introduction of parol testimony to contradict a written agreement under the application of this doctrine. It may be that some will arise where a distinction can be drawn, but it would be a useless speculation to attempt to work out and state an illustration of it. What I have said is more an expression of my personal condemnation of the doctrine than a criticism of it. The law is thus written by the supreme

court of this state which this court is bound to follow. But it must be remembered the rule is applied to a note indorsed after maturity and in a suit by that holder. Had the suit been brought by an innocent holder by indorsement before maturity, a far different question would have been presented, and other principles might have permitted different conclusions.

As we said in the *Barets* case it ought to be established beyond peradventure, and there ought to be no question in the mind of the court or the jury trying the case, respecting the truth of the evidence offered to support the contemporaneous parol agreement. The evidence ought to be clear, decisive, emphatic and undoubted. Apparently the court believed the statement of these witnesses although they were contradicted by Hill, and emphatically attacked by proof of these payments extending over a couple of years on the outstanding paper. It is quite difficult as the case is presented to us on paper to understand how the court arrived at the conclusion. Doubtless the witnesses impressed him with their truthfulness and he believed their story, although it was so directly contradicted by the terms of the paper and by the history of the transaction. I gravely doubt whether the court ought to try this case even by consent of parties. I quite believe it is one of those cases peculiarly for a jury, and if the jury renders a verdict finding the facts as the court found them it will probably settle the matter. The cases supporting the doctrine are *Burke v. Dulaney*, 153 U. S. 228, *Hurlburt v. Dusenbery*, 26 Colo. 240, and *Brewing Co. v. Barets*, 9 Colo. App. 341.

While the preceding discussion determines what is in reality the important question in the case, yet the appeal will turn upon another matter. As foreshadowed by the statement, during the trial of the case, the plaintiff in support of the paper and in contradiction of the evidence of the witnesses concerning the agreement to pay out of the proceeds of the mill, offered to prove the statements which they made at the time they made the several partial payments to

the attorney and to his collector. This testimony was rejected. The importance of the objection may not be so apparent to the legal mind as it would be had the case been tried to a jury. In the latter event, all lawyers would concede that if this testimony is admissible, which it clearly was, it would have been error to keep it away from the jury because it might have large influence in determining their verdict. It is quite manifest that when a promissory note is put in evidence and is a direct promise to pay at a year's time for a valuable consideration a certain sum of money, and the parties attempt to put it out of existence by showing a parol agreement that it was only to be paid out of the proceeds of a mill, it would be entirely legitimate to attempt to overcome that testimony by evidence showing that the note had been presented to them for payment, that they had repeatedly made payments on it, and that at the time the note was presented by the attorney or by his agent they made repeated promises to pay and said nothing about the agreement. Manifestly such evidence would tend to shake, or at least it would cast some sort of doubt upon the accuracy of the recollection of the witnesses and the jury would have a right to consider it in determining whether or not their story was true so long as it was contradicted by the other parties to the transaction. We are quite clear this testimony was admissible. Respecting its force we have nothing to say. It is for the jury or trial court to determine that matter. The judge however who heard the case declined to receive it. It may appear singular that so long as the case was tried to the court we should reverse it because of this error. We however are unable to see that the rule ought not to prevail where the case is tried to the court as well as where it has been tried to a jury. How can we tell what effect this testimony if admitted or if held admissible and considered by the judge would have had with him when he came to determine where the truth lay, and whether or not this agreement was sufficiently proved to overcome the force and effect of the paper. We are unable to perceive that the rule ought

not to be the same when the case is tried to the court as when it is tried to the jury. The court manifestly erred in rejecting that testimony and for this reason the case will be reversed and sent back for a new trial in conformity with this opinion.

*Reversed.*