[No. 4180.]

## GEORGE V. WILLIAMS.

1. PROMISSORY NOTE—*Cotemporary Parol Agreement as to Payment.* Of even date with a promissory note the maker subscribed for a share of stock in the corporation named as payee therein. In an action upon the note by an assignee after maturity, it was *held* that a parol agreement, cotemporary with the execution of the note, and upon the faith of which it was executed, to the effect that the note would be paid from the maker's share in the dividends of the corporation, and not otherwise, was a complete defense to the action. (403-405.)

2. EVIDENCE—*Parol Admissible,* to show an agreement, cotemporary with the execution of a promissory note, as to the manner in which it should be paid, the action being by an assignee who took subsequent to maturity. (405.)

3. CONTRACTS—*Construed.* Of even date with a promissory note, an agreement was framed to the effect that dividends accruing to the maker upon a share of stock in the corporation named as payee, should be applied upon the note, and that "if said dividends shall not have fully paid said note at maturity, the same may be extended for one year." *Held,* that the note was not automatically extended by a deficiency in the dividends to discharge it. (411.)

*Error to Mesa District Court.* HON. THOS. J. BLACK, Judge.

MESSRS. BURGESS & KINARD and MR. STRAUD M. LOGAN, for plaintiff in error.

MESSRS. GRIFFITH, WATSON & SMITH, for defendant in error.

HURLBUT, J., rendered the opinion of the court.

The amended complaint was filed in the court below February 8, 1913, the plaintiff therein being plaintiff in error, and the defendant, defendant in error here. It appears therefrom that on March 26, 1912, The Union Trading Company, a domestic corporation, executed and delivered its trust deed to Stanley B. Coffin, trustee, upon all the real estate belonging to the company; that on the same

day, by a certain agreement and pledge in writing, the company transferred, delivered and pledged to the said Coffin, as trustee, all the notes then held and owned by it, aggregating the principal sum of $46,000, to secure the payment of certain promissory notes executed and delivered by the company, aggregating the sum of $25,000; that by the terms of said agreement and pledge the trustee was authorized to collect all of said notes held and owned by the company, and delivered to him as aforesaid, with the interest due thereon, and apply the net proceeds thereof to the payment of the said $25,000 evidenced by the promissory notes of the company as stated; that on October 12, 1912, said Coffin, trustee, resigned his trust, and Harry C. George, plaintiff herein, was substituted by the beneficiaries in the place of said Coffin, and succeeded to all the rights, privileges, duties and obligations of said Coffin, with full power to act in his place and stead; that among the notes held and owned by the said company as aforesaid was one which is the basis of this action, and reads as follows:

"$100.00          Pueblo, Colorado, June 13, 1910.

On or before January 1st, 1912, for value received, I promise to pay to

THE UNION TRADING COMPANY*

or order, the sum of ONE HUNDRED DOLLARS, with interest at the rate of 10 per cent per annum from date until paid, Principal and interest payable at the office of the company at Pueblo, Colorado.

David Williams,

P. O., R. F. D. No. 3, Grand Junction,

No. 29.                                   Colorado.

Pueblo, Colorado, June 13, 1910.

In consideration of the execution of the above note, certificate of stock No. 288, for one share of UNION TRADING COMPANY stock has been issued to DAVID WILLIAMS, and the same is hereto attached, as security for the payment of said note, principal and interest.

And it is mutually agreed that all dividends accruing to the said DAVID WILLIAMS on said stock and on patronage during the life of said note, shall be applied to the payment of the same. It is further agreed that if said dividends shall not have fully paid said note and interest, at maturity, the same may be extended for the further period of one year.

THE UNION TRADING COMPANY,

By S. Z. Szhenck,

David Williams.";

that no part of such note had been paid, except the sum of $7.66, which sum was credited thereon as arising from stock and patronage dividends, in pursuance of the collateral agreement accompanying the note.

Answer was filed by defendant Williams, containing three defenses, two of which were eliminated by the court during progress of the trial, leaving the third defense stand. This defense, in substance, admitted the execution and delivery of the note by defendant, and its non-payment, but pleaded, as a defense, that the note was given by him in payment of one share of the company's stock, but upon condition, consented and agreed to by the agent of the company, at the time of its delivery, that the defendant Williams should not be required to pay any cash thereon, and that he should have the right to pay the entire note out of stock and patronage dividends, thereafter to accrue to him; that payment of the instrument was to be made solely out of such dividends; and that the plaintiff, and the beneficiaries mentioned in the trust instrument had full knowledge and notice of such agreement and condition, at the time the instrument sued on was assigned or delivered to the trustee for collection as aforesaid.

The case was tried to a jury and verdict rendered in favor of defendant, upon which judgment was rendered. Exceptions were reserved and the case was taken to the Supreme Court by proper proceedings, and is now before

this court for determination by lawful transfer from that court.

It appears from the record and briefs that the court tried the case upon one issue only, and that was, whether or not there was a contemporaneous agreement between the maker and payee of the note, at the time it was executed and delivered, that the same was to be paid only out of stock and patronage dividends subsequently to accrue.

In support of the third defense pleaded, defendant, over the objection of plaintiff, was permitted to give testimony to the effect that, simultaneously with the signing of the instrument sued on, the trading company's agent, Mr. Hughes, stated to him that the instrument was different from a promissory note, and that his only purpose in urging defendant to sign the same was to insure his patronage with the trading company; that defendant would not have to pay any cash, or ever pay a dollar, but that, before the end of 1913, defendant would have a share of stock in his possession, all paid out of patronage; that there would be 40% of net profits in patronage, and an equal per cent. in dividends on the stock; that defendant would pay out the $100 in patronage and dividends; that if not paid in 1912, at the date of its maturity the note would be extended for one year, and he (Hughes) would guarantee it would be fully paid off; that defendant positively refused to sign any note for the stock, whereupon the agent Hughes told him he only wanted defendant to sign the note for the purpose of securing the defendant's patronage at the company's store; that upon these statements being made by Hughes, defendant, relying thereon, signed and delivered the instrument; that defendant never had any notice of any dividends coming to him from the company; and that defendant patronized the company's store at all times from the delivery of the note until it closed its doors and ceased to do business.

The court, by its instruction No. 2, instructed the jury substantially that if they believed from the evidence that

the said contract note was signed and delivered by the defendant Williams with the understanding and agreement between him and said Hughes that the instrument should be paid for only out of dividends thereafter accruing upon stock, and that defendant would not be required to pay any cash thereon, then they should find for the defendant; but if they should find from the evidence that the contract was not signed with any such understanding and agreement, their verdict should be for the plaintiff. If the testimony of the defendant Williams, and other witnesses, tending to establish the condition upon which defendant executed and delivered the instrument, as pleaded by him in the third defense, was admissible and proper, then the judgment should not be disturbed, as the evidence of such condition was sufficient to establish the same, although controverted, the jury finding in favor of defendant upon that issue; but if such testimony was improper and violative of the rule next hereinafter referred to, the judgment should be reversed.

The real nub of the controversy involves the interpretation and application of the well established rule that a written contract cannot be contradicted or varied by evidence of an oral agreement between the parties, made before or at the time of such contract. Our own Supreme Court has repeatedly recognized the rule, and it is so well understood that citation of authorities may be dispensed with. However, it is well known that since the time the rule was first promulgated, and followed by the various appellate courts of this country, many exceptions have been grafted thereon. In fact the exceptions are so far reaching that it may be said, in the language of a distinguished jurist, that "the exceptions indeed have in many instances almost eaten out the heart of the rule itself." We will not attempt to enumerate all the numerous exceptions. Some may be found in the cases hereinafter cited. In proceeding to discuss this feature of the case we suggest that the

authorities are in decided conflict as to whether or not, in a case of this kind, parol evidence of a condition or agreement between the contracting parties, made simultaneously with the execution and delivery of the written instrument, is admissible in evidence as a defense to an action on the written contract.

In the well-considered case of *Norman v. McCarthy*, 56 Colo., 290, 138 Pac., 28, Justice Musser, speaking for the court, held that parol testimony of a contemporaneous agreement between the parties to a written contract, had at the time the contract was executed, was admissible in evidence as a defense to the contract, if such testimony tended to show that the check in issue was not intended to be payable unless the maker should thereafter recover judgment in a certain suit then pending.

In *Sayre v. Leonard*, 57 Colo., 116, 140 Pac., 196, a similar question was before the Supreme Court, and the *Norman v. McCarthy* case was cited, approved and followed.

In *Bourke v. Van Keuren*, 20 Colo., 95, 36 Pac., 882, the controlling question before the court was as to the admissibility and legal effect of certain oral testimony which, it was claimed, altered the legal meaning of the written instrument which was the subject of the action. The testimony was held admissible. The court said, in part:

"An oral stipulation may always be shown that the instrument was not to become of binding force unless some condition precedent was previously fulfilled. * * *

We think, therefore, that the oral testimony introduced was admissible to show the condition upon which the written agreement signed by appellee was to become effective, if at all."

To the same effect, *Brewing Co. v. Barets*, 9 Colo. App., 341, 48 Pac., 834.

None of the cases heretofore cited involve facts which can be said to be entirely similar to those disclosed by the record in the case at bar, but they all involve the applica-

tion of the general rule above stated, with some form of exception thereto.

But in the case of *Roberts v. Greig et al.*, 15 Colo. App., 378, 62 Pac., 574, we discover a state of facts noticeably similar in effect and import to those found in the case at bar. In that case a promissory note for $588 was executed and delivered by Lomax, Greig and Harris, makers, to one Hill, payee, payable one year from date. Hill indorsed the same, after maturity, to appellant Roberts, who brought suit against the makers for the unpaid balance thereon. The execution and delivery of the note was not controverted by the makers, but they defended the action on the ground that at the time of such execution and delivery there was a distinct understanding and agreement between the makers and the payee that the note was to be paid only out of the future proceeds of a mill owned by the company, and if there were no earnings from the mill, the note was to be returned and destroyed. The condition or agreement alleged as a defense was proven by parol testimony on the part of the makers, over the objection of the payee, and the Court of Appeals held such testimony admissible in proof of the defense set up. After citing *Burke v. Dulaney*, 153 U. S., 228, 38 L. Ed., 698, 14 Sup. Ct., 816, and *Hurlburt v. Dusenbery*, 25 Colo., 240, 57 Pac., 860, the court said, in part:

"In other words, it is quite impossible for me logically to conceive of a difference between the two cases or between those two cases and the present. In all three of them, according to the testimony, the note was not to take effect as a note until the happening of an event in the future. In the *Dulaney* case the event which was the condition precedent was the opportunity to open up and develop the property and determine its value. If found satisfactory, then the note was to be the consideration price. In the *Dusenbery* case there was a direct agreement to pay so much for the running of a tunnel, yet the party proved that this

whole agreement was a part of a scheme to place the mines in London for a named consideration, and only in the event of a successful promotion were the parties to pay the owners of the property the expenses of running the tunnel. In the present case the parties were co-partners, and they took the property and assumed the debts, and as an added consideration were to pay Hill $586, providing the running of the mill produced that result, either gross or net. In other words, the completed delivery of the note was only to happen in the event the mill ran and money was gotten out of the operation."

In the case just cited, as well as in the one at bar, it will be noticed that the instrument sued on was strictly a negotiable promissory note, and contained all the elements to make it so, as required by the common law, as well as sec. 4647, Revised Statutes, 1908. In that case the contemporaneous agreement proven by parol evidence showed that the payee of the note could only enforce payment thereof in case sufficient proceeds should be obtained from future earnings of a mill. In the instant case the parol testimony proved that the note was payable only in case dividends should be realized from future business operations of the trading company. We find the facts and circumstances of the two cases so analogous in import that we feel safe in declaring the question here raised and discussed to be *stare decisis.* In support of the rule declared in the *Roberts* case may well be cited *Hurlburt v. Dusenbery, supra.* Both cases are strongly supported by other authorities.

In *Greenwalt v. Kohne et al.,* 85 Pa. St., 369, an action was brought upon a bond, and the defense was that it was executed and delivered only upon condition and understanding had at the time, between the parties thereto, that it was given for the purchase price of a lot; that if the obligor did not like the property, the obligee would take it back on request, and pay the former a premium, and the cost of improvements; and that no personal liability should attach

to the obligor for the purchase money, but that plaintiff should look solely to the property purchased for payment. The court held that parol testimony to prove such condition and agreement was admissible as a defense to the action. The appellate court, speaking through Justice Sharswood, said, in part:

"We are of opinion that the offers of evidence by the defendant below ought to have been received. It is agreed that the English rule excluding parol evidence to vary a written contract has not been adopted in this state in all its stringency. The exceptions, indeed, have in many instances almost eaten out the heart of the rule itself; but it is not altogether abolished, as may be seen in *Martin v. Berens*, 17 P. F. Smith, 459. * * * But from *Hurst's Lessee v. Kirkbride*, decided in 1773, reported by Chief Justice Tilghman in *Wallace v. Baker*, 1 Binn., 61—down to the present time, this court has uniformly held, that where, at the execution of a writing, a stipulation has been entered into, a condition annexed, or a promise made by word of mouth, upon the faith of which the writing has been executed, that parol evidence is admissible, though it may vary and materially change the terms of the contract. * * * It would be an affectation of learning to cite all the cases which establish this principle, but to those contained in the argument of the counsel of the plaintiff in error may be added *Miller v. Henderson*, 10 S. & R., 290, which is *instar omnium*, but may be noticed as a case on all fours with the one now before the court. There parol evidence was held to be admissible under the plea of payment to a suit on a bond against a surety, to show that he executed the bond under a declaration by the obligee, that his signing was mere matter of form, and that he never should be called on for payment. Chief Justice Tilghman says: 'The destruction of a written instrument by parol evidence may seem dangerous, and, in fact, it is so. But the community would be in a still worse condition if it were established as an

inflexible rule, that when a man's hand was once got to an instrument, no matter by what means, the door should be shut against all inquiry. The encouragement to fraudulent villainy would be so great under such a system that the consequences might be intolerable."

In *Juniata Building Association v. Hetzel*, 103 Pa. St., 507, the court said, in part:

"No principle is better settled than that parol evidence is admissible to show a verbal contemporaneous agreement, which induced the execution of a written obligation, though it may vary or change the terms of the written contract. Therefore, it was competent for the defendant to prove, if he could, that it was agreed before and at the time he signed the bond that it should not be resorted to until after the security of the mortgage was exhausted, and that the security of the mortgage was lost through the plaintiff's negligence."

In *Coal & Iron Co. v. Willing*, 180 Pa. St., 165, 36 Atl., 737, 57 Am. St., 626, the court said, in part:

"It is a plain fraud to secure the execution of an instrument by representations as to the manner in which payment shall be made, differing in important particulars from those contained in the paper, and, after the paper has been signed, attempt to compel literal compliance with its terms, regardless of the contemporaneous agreement without which it would never have been signed at all."

To the same effect, *Keller v. Cohen*, 217 Pa., St., 522, 66 Atl., 862.

*Quin v. Sexton*, 125 N. C., 447, 34 S. E., 542, was an action upon a promissory note, to which defense was made that its execution and delivery was accompanied by a distinct understanding between the maker and payee that the note was to be paid out of the proceeds of another and different note, when collected, and not otherwise; and that the other note was never paid. Parol evidence was admitted, over objection, to prove the defense set up. The

Supreme Court held the ruling proper, and that if the defense was so proven, no liability attached to the maker of the note.

There is another point presented by the record which of itself might warrant an affirmance of the judgment. It appears from the testimony that before defendant signed the note, the company's agent, Mr. Hughes, called on him several times at his farm, for the purpose of interesting him in the company, and that he first made effort to have defendant invest outright $100 in money. Upon defendant's positive refusal to do so, Hughes then solicited him to sign a note for that amount, payable in six months or a year, which proposition defendant with equal positiveness rejected, whereupon Hughes urged defendant to sign an instrument to insure his patronage at the company's store, stating that the company had a patronage plan that he could "get on." The following is part of defendant's testimony:

"Well, I says (speaking to Hughes), I don't propose to sign any note. Well, I read the note. I says, this is the same as a promissory note. Oh, you read further on, he says, read the bottom and so on to the end of it, and you will find it is different. I read it. Well, I says, do you say to me in good faith that this is just to insure my patronage with The Union Trading Company? He said yes, and just about in that line, and I signed the note, this instrument. * * * I traded (there) at all times until the doors closed."

If the jury believed this testimony and concluded therefrom that it was the understanding that the only purpose in giving the note by defendant was to insure his patronage, and in pursuance thereof defendant patronized the company's store at all times until its doors were closed, then that purpose had been accomplished, and no action could be maintained on the note. A similar situation to this has undergone a thorough examination and review of authorities in the case of *Divine v. The Western Slope Fruit Grow-*

*ers Association,* No. 4167 Colo. App., decided at this term, wherein Presiding Judge Cunningham has thoroughly considered the question involved. We adopt the authorities and reasoning of that case, which was to the effect that where a promissory note was executed and delivered for the single purpose of permitting the payee to use it as collateral security, which was done, and it appearing that the principal debt for which the note was deposited as collateral was paid, it was held that no action could be maintained on the note.

It is well to note at this time that all the cases hereinbefore cited or referred to involve actions between the original parties to the written instruments sued on, or between one of the parties and an assignee of the other, who had full knowledge of the vices or defects of the written instrument; or, in cases of negotiable instruments, between one of the original parties and an assignee of the other, who acquired his title thereto after maturity.

The record shows that the instrument here in issue was on its face payable on or before January 1, 1912; that it was negotiated to the trustee March 26, 1912; therefore he acquired title to the note after maturity, and was not a holder in due course. The note on its face nowhere provides for its renewal after maturity; but in the collateral condition accompanying the same it is provided that if the note is not paid at its maturity it may be continued for one year thereafter. It is pleaded in the complaint that the note was extended one year, which is denied in the answer. There is no evidenc in the record showing such extension or renewal. We do not think, under the situation disclosed, that the note was automatically extended by proof that it was not paid at maturity.

Some other questions are raised by the record and discussed in the briefs, but we deem them all ancillary to the main question already decided; hence, no further reference need be made to the same.

We find that no error was committed by the trial court in admitting evidence, and that the instructions were, as a whole, fair to both parties. The judgment will be affirmed.